296 Ga. 384
FINAL COPY

S14A1369. KITCHENS v. THE STATE.

MELTON, Justice.

Following a jury trial, Shawn Kitchens was found guilty of felony murder, aggravated assault, possession of a firearm during the commission of a felony, and participation in criminal street gang activity.[1] On appeal, Kitchens contends, among other things, that the evidence was insufficient to support the verdict and that the trial court erred by improperly charging the jury on motive. Kitchens further claims that trial counsel rendered ineffective assistance. For the reasons set forth below, we affirm.

---

[1] On April 5, 2011, Kitchens was indicted for malice murder, felony murder, two counts of aggravated assault, possession of a firearm during the commission of a felony, and participation in criminal street gang activity. Following a joint jury trial, Kitchens was found guilty of all counts except malice murder on September 2, 2011. On September 7, 2011, the trial court sentenced Kitchens to life imprisonment for felony murder and aggravated assault, twenty consecutive years for aggravated assault, fifteen consecutive years for participation in criminal street gang activity, and five additional consecutive years for possession of a firearm during the commission of a felony. Kitchens' motion for new trial, filed on September 21, 2011, and amended on September 17, 2013, was denied by the trial court on March 25, 2014. Thereafter, Kitchens filed a timely notice of appeal, and his case, submitted on the briefs, was docketed to the September 2014 term of this Court.

1. In the light most favorable to the verdict, the record shows that, on the evening of July 27, 2010, Tavish Faulks and Emanuel Stroud went to Edward Collier's "convenience store" operated out of Collier's residence. When they arrived, Kitchens, who had been picked up earlier by Collier, was sitting outside on the porch with his co-defendants, Travis Taylor, Shemarques Watkins, and Jerald Johnson.[2] All four men were associated with the "Westside" or "Unionville Crips" gang, and there was some testimony that, because of that affiliation, they would be unwelcome in Collier's neighborhood. Stroud and Faulks were associated with another group known as the "Bloomfield Boys." Kitchens and Stroud began arguing over a MySpace post,[3] and Faulks tried to intervene to end the altercation. According to several witnesses, Kitchens walked up to Faulks with his gun drawn. Kitchens instructed other men on the porch, who had guns, to shoot if Faulks intervened or moved. Stroud and Faulks began to walk away when Stroud heard whispers followed by shots from

[2] Kitchens was indicted along with Travis Taylor, Edward Paul Collier, Shemarques Trevon Watkins, and Jerald Leonard Johnson. Collier and Watkins entered guilty pleas before the jury was selected and sworn. Johnson entered a guilty plea shortly after the trial began. As a result, the jury ultimately determined the guilt of only Kitchens and Taylor.

[3] No evidence was presented at trial regarding the content of this post.

multiple guns.[4] Faulks and Watkins were injured, and Rodgeren Gary, a regular customer of Collier, was mortally wounded. Faulks identified Kitchens as the shooter, and he also later identified Kitchens in a photo lineup.

With regard to gang activity, Detective Sedrick Pinson testified that gangs in Macon were known for acts of violence such as murder, shootings, and car jackings, and with every major gang-related case the police had investigated recently, a social media website had fueled the violence between gangs. As stated, there was also evidence that Kitchens was associated with one gang and that Stroud was associated with another. In addition, Collier testified that bringing Kitchens and Watkins to his home had been a bad idea, because they were not welcome on that side of town. Collier further testified that bringing the two men into that neighborhood likely "started the whole thing." Watkins testified in a similar manner.

This evidence was sufficient to enable a rational trier of fact to find Kitchens guilty of all the crimes for which he was convicted beyond a reasonable doubt. Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d

---

[4] Some testimony indicated that a number of the Bloomfield Boys gathered in the street and also started shooting.

560) (1979). See also <u>Jones v. State</u>, 318 Ga. App. 26 (1) (b) (733 SE2d 72) (2012).

2. Kitchens contends that the trial court erred by denying his request to give his own particularized instruction regarding the possible motives of testifying witnesses. Rather than giving Kitchens's instruction, the trial court gave the pattern jury charge on witness testimony. As such, the jury was properly instructed that they "alone shall decide the believability of the witnesses," and could consider "any possible motive . . . negotiated pleas, grants of immunity or leniency, or similar matters." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.31.80. Contrary to Kitchens's contentions, this instruction fully apprised the jury how to consider the testimony of witnesses, including the testimony of Kitchens's co-defendants who testified after entering plea deals. There was no error.

3. Kitchens argues that the trial court erred by failing to grant his motion to sever his trial from his co-defendant, contending that his case was harmed by antagonistic defenses. We disagree.

It is well-settled that a

trial court has broad discretion to grant or deny a motion for

4

severance. See OCGA § 17-8-4 [Cit.] In ruling on a severance motion, the trial court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses. [Cit.]

Krause v. State, 286 Ga. 745, 749 (5) (691 SE2d 211) (2010). "The burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing [that a joint trial would lead to] prejudice and a consequent denial of due process." Character v. State, 285 Ga. 112, 118 (5) (674 SE2d 280) (2009) (punctuation and footnote omitted).

In this case, there was little likelihood of jury confusion, as there were ultimately only two defendants and there was no difference in the law applied to either of them. See Moon v. State, 288 Ga. 508, 510 (2) (705 SE2d 649) (2011) (holding that "there was no likelihood of confusion by the jury as to the evidence and the law because there were only two defendants 'who were jointly indicted for the same offenses, which involved the same witnesses, and the evidence indicated that they acted in concert'") (citation omitted). In addition, the jury returned a separate verdict for each defendant and considered each

5

indictment separately. See Thorpe v. State, 285 Ga. 604, 609 (678 SE2d 913) (2009) ("There is likewise no indication that the jury confused the evidence or law; all three defendants were charged with identical crimes, and the jury, in reaching different verdicts as to each co-defendant, proved itself amply capable of distinguishing the evidence relevant to each."). Lastly, Kitchens has failed to show how his defenses were antagonistic toward his co-defendant. Even if he had, however, the presence of antagonistic defenses "alone . . . is insufficient to require severance, because 'unless there is a showing of resulting prejudice, antagonistic defenses do not automatically require a severance.'" (Citation omitted.) Herbert v. State, 288 Ga. 843, 845 (708 SE2d 260) (2011). No such showing has been made. Accordingly, the trial court did not abuse its discretion in denying the motion for severance.

4. Kitchens contends that trial counsel provided ineffective assistance by failing to investigate and call Adrian Stokes and Louis Frazier as witnesses during trial. See Strickland v. Washington, 466 U. S. 668 (II) (104 SCt 2052, 80 LE2d 674) (1984). However, contrary to Kitchens's claims, it cannot be said that trial counsel failed to investigate these witnesses. Testimony at the motion for new trial hearing indicates that the witnesses were brought to trial counsel's

office and that they were questioned by her. Moreover, Kitchens presented no testimony from either witness at the motion for new trial hearing. As a result, Kitchens merely speculates that these witnesses may have provided information beneficial to his case, which is not sufficient to support a claim of ineffective assistance. See McDaniel v. State, 279 Ga. 801 (2) (d) (621 SE2d 424) (2005).

Judgment affirmed. All the Justices concur.


Decided January 20, 2015.

Murder. Bibb Superior Court. Before Judge Christian, Senior Judge.

W. Rocky Adams, for appellant.

K. David Cooke, Jr., District Attorney, Sandra G. Matson, Myra H. Tisdale, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Rochelle W. Gordon, Assistant Attorney General, for appellee.