In the Supreme Court of Georgia


Decided: February 8, 2016


S15A1459. MARQUEZ v. THE STATE.


BLACKWELL, Justice.

Hector Marquez was tried by a Fulton County jury and convicted of murder and the unlawful possession of a firearm during the commission of a felony, both in connection with the fatal shooting of Maxwell Fiandt. Marquez appeals, contending only that the trial court erred when it failed to sever his trial from that of his co-defendant, Jahvon Pittman. Upon our review of the record and briefs, we see no error, and we affirm.[1]

---

[1] Fiandt was killed on March 3, 2010. Along with Pittman and Melville Reid, Marquez was indicted on July 2, 2010, and each of the three men was charged with malice murder, three counts of felony murder, criminal attempt to commit armed robbery, conspiracy to commit armed robbery, aggravated assault, and the unlawful possession of a firearm during the commission of a felony. Reid pled guilty to voluntary manslaughter and testified for the State at the joint trial of Marquez and Pittman, which commenced on January 25, 2011. The jury returned its verdict on February 4, 2011. The jury did not reach a verdict as to two counts of felony murder and criminal attempt to commit armed robbery, but it acquitted both Marquez and Pittman of malice murder and found them guilty on all of the remaining counts. Marquez was sentenced to imprisonment for life for felony murder and a consecutive term of imprisonment for five years for unlawful possession of a firearm during the commission of a felony, although this consecutive sentence was suspended. The remaining conspiracy and aggravated assault counts were merged with the felony murder. It appears from the record that Pittman was sentenced in the same way, except that his consecutive term of

1. Viewed in the light most favorable to the verdict, the evidence shows that Fiandt sold marijuana, and Melville Reid was among his customers. Reid and Marquez worked together at a collection agency. On the evening of March 3, 2010, Reid and Marquez agreed that, after Reid finished his work at the agency, they would rob Fiandt. Later that evening, Marquez and Pittman picked up Reid from the agency, and they drove together to the apartment building in which Fiandt lived. To gain entry to the building, Reid contacted Fiandt about purchasing marijuana. Reid then went alone to Fiandt's apartment and made the purchase. After receiving numerous text messages from Marquez, Reid left the apartment but lingered in a nearby stairwell. Marquez and Pittman knocked on the door of the apartment, Fiandt answered, and a struggle ensued. Fiandt's roommate left his room to investigate and saw Marquez restraining Fiandt. Pittman pointed a handgun at the roommate, who retreated to his closet. Moments later, a shot was fired. Police officers who responded to the apartment found Fiandt's body lying in a pool of blood next to a broken jar that contained

imprisonment for five years for possession of a firearm during the commission of a felony was not suspended. Marquez timely filed a motion for new trial on February 15, 2011, and he amended it on November 16, 2012. The trial court denied his motion on December 7, 2012, and Marquez timely filed a notice of appeal on January 3, 2013. The case was docketed in this Court for the September 2015 term and was submitted for decision on the briefs.

marijuana. Fiandt had died from a gunshot wound to his head. Marquez does not dispute that the evidence is sufficient to sustain his convictions, but we nevertheless have independently reviewed the record with an eye toward the legal sufficiency of the evidence. We conclude that the evidence adduced at trial was legally sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Marquez was guilty of the crimes of which he was convicted. Jackson v. Virginia, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LEd2d 560) (1979).

2. In his sole enumeration of error, Marquez contends that the trial court erred when it denied his pretrial motion to sever his trial from that of Pittman. When several defendants are indicted together for a capital crime, but the State does not seek the death penalty, whether the defendants are to be tried together is a matter committed to the sound discretion of the trial court. OCGA § 17-8-4 (a). "In ruling on a severance motion, the court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses." Nwakanma v. State, 296 Ga. 493, 498 (3) (768 SE2d 503) (2015) (citation and punctuation omitted). And as we

have explained, "the burden is on the defendant requesting the severance to do more than raise the possibility that a separate trial would give him a better chance of acquittal. He must make a clear showing that a joint trial would lead to prejudice and a consequent denial of due process." Thomas v. State, 293 Ga. 829, 830-831 (2) (750 SE2d 297) (2013) (citation and punctuation omitted).

About the three factors to be considered on a motion to sever, Marquez points only to the third factor, arguing that he and Pittman asserted antagonistic defenses at trial. Marquez testified in his own defense, and although he admitted that he was present when Fiandt was killed, he said it was an accident. He explained that he accompanied Reid and Pittman to the apartment to get marijuana, and when Pittman tried to pay Fiandt with counterfeit money, Fiandt and Pittman started to fight. Marquez said that, as he attempted to stop the fight, a pistol fell to the floor, Pittman picked it up, and it accidentally discharged, killing Fiandt. Pittman did not testify at trial, but he called several witnesses (including his grandmother) in support of an alibi defense, claiming that he was not present at the apartment at the time of the killing.

For the purposes of this appeal, we will accept that these defenses were antagonistic to some extent. But see Howard v. State, 279 Ga. 166, 172 (4) (611

SE2d 3) (2005) ("We are unable to perceive how the assertion of an alibi defense by Howard was harmful to Durham who admitted his participation in the crimes."). Even so, as we have explained before, "the presence of antagonistic defenses alone is insufficient to require severance." Kitchens v. State, 296 Ga. 384, 387 (3) (768 SE2d 476) (2015) (citation and punctuation omitted). To show error in the denial of his motion to sever, Marquez must show that, considering these antagonistic defenses, a joint trial was so prejudicial as to amount to a denial of his right to due process. See Butler v. State, 270 Ga. 441, 447 (4) (511 SE2d 180) (1999). Marquez has failed to make such a showing.

In an effort to establish prejudice, Marquez says that the joint trial forced him not only to defend against the proof offered by the State, but also to defend against the alibi defense pressed by Pittman. But that is true in any case in which the co-defendants present antagonistic defenses, and as we noted earlier, "the presence of antagonistic defenses alone" is not enough to require severance. Marquez also argues that he was prejudiced because he could not call Pittman as a witness in a joint trial. But the inability to compel the testimony of a co-defendant in a joint trial does not require severance in the absence of a showing

5

that the co-defendant would, in fact, have been more likely to testify if they were tried separately and that the testimony of the co-defendant would have been exculpatory. See Butler v. State, 290 Ga. 412, 414 (2) (721 SE2d 876) (2012); Owen v. State, 266 Ga. 312, 314 (2) (467 SE2d 325) (1996); Cain v. State, 235 Ga. 128, 130 (218 SE2d 856) (1975). Cf. Perry v. State, 173 Ga. App. 541, 542 (3) (327 SE2d 527) (1985) (where co-defendant did testify at joint trial); Price v. State, 155 Ga. App. 206 (1) (270 SE2d 203) (1980) (same), rev'd on other grounds, 247 Ga. 58 (273 SE2d 854) (1981). Marquez has made no showing that Pittman would have been likely to offer testimony exculpatory of Marquez, if only they had been tried separately. Finally, Marquez complains that he was unable to test the antagonistic alibi defense by a thorough and sifting cross-examination of Pittman. But Marquez had no opportunity to cross-examine Pittman only because Pittman did not testify at all. Marquez *did* have an opportunity to cross-examine the witnesses that Pittman called in support of the alibi defense. Marquez has failed to show that he was so prejudiced by a joint trial that he was denied due process, and as such, he has failed to show an abuse of discretion in the denial of his motion to sever. See Howard, 279 Ga. at 172 (4).

Judgment affirmed. All the Justices concur.

6