308 Ga. 81
FINAL COPY

S19A1098. SMITH v. THE STATE.

WARREN, Justice.

Omari Smith was convicted of felony murder and other crimes in connection with the shooting death of T'Shanerka Smith (who was not related to Omari Smith).[1] On appeal, Smith contends that the

---

[1] The crimes occurred on February 14, 2010. A Fulton County grand jury indicted Smith along with co-defendants Jeneral Walter, Darron Cato, and Andrew Neloms, on May 7, 2010, charging them with malice murder, felony murder, aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. The four co-defendants were tried together in November 2010, although the trial court declared a mistrial as to Cato when his counsel began experiencing medical problems mid-trial. The trial of Smith, Walter, and Neloms continued, and the jury found Smith and Walter not guilty of malice murder but guilty of felony murder and the other charges; it acquitted Neloms of all charges. Cato's case was later tried in August 2011, and the jury found him not guilty of malice murder but guilty of felony murder and the other charges. We have already affirmed Walter's and Cato's convictions. *Walter v. State*, 304 Ga. 760 (822 SE2d 266) (2018); *Cato v. State*, 304 Ga. 496 (820 SE2d 41) (2018).

The trial court sentenced Smith to life in prison on the felony murder count and a consecutive five-year sentence on the firearm count and merged the aggravated assault count. Smith, through trial counsel, filed a motion for new trial on November 30, 2010, and amended it on March 8, 2013. The trial court denied the motion, as amended, on June 9, 2015. On July 7, 2015, Smith, still through trial counsel, filed a notice of appeal, which was docketed in this Court on May 17, 2018. *Smith v. State*, Case No. S18A1240 (July 30, 2018). On June 6, 2018, Smith's present counsel filed a notice of substitution of counsel and moved to remand the case so he could develop allegations of

evidence was insufficient to support his convictions; that the trial court erred by denying Smith's motion for a separate trial; that trial counsel rendered constitutionally ineffective assistance by failing to object to the court's jury charge on conflicts in testimony; and that the trial court erred in denying Smith's motion for a continuance of the hearing on his motion for new trial. We disagree and therefore affirm Smith's convictions.

1. In this Court's opinion affirming the convictions of Smith's co-defendant Walter, we summarized the evidence presented at Smith, Walter, and Neloms's joint trial. Viewed in the light most favorable to the verdicts, that evidence showed the following:

> The victim's death can be traced to a dispute between her brother (Eddie Edwards) and a group that included Walter, Darron Cato, Omari Smith, Andrew Neloms, and Derek McCarter. Edwards lived at the

___

ineffective assistance of trial counsel. We granted that motion "for the limited purpose of allowing an evidentiary hearing on ineffectiveness claims identified in Appellant's Motion to Remand." After a hearing on remand, the trial court denied Smith's motion for new trial on October 31, 2018. Smith filed a motion for out-of-time appeal on February 7, 2019, which the trial court granted. Smith then appealed to this Court, and the case was orally argued on August 6, 2019.

Fulton County apartment complex where he performed maintenance, while McCarter was squatting in another unit at the complex. The night before the shooting, McCarter, Walter, and others gathered to party in that apartment.

The next day, Edwards arrived at the unit and began removing the locks from the doors, telling McCarter and Cato that they needed to leave. Walter became involved in the discussion; he had a firearm and picked up another that had been on a couch. After Edwards returned to his own apartment, a group of four men drove up in a car, and Walter began shooting through one of the backseat windows at a group of Edwards's cousins gathered outside Edwards's apartment. No one was injured by the shooting. After the shooting, Edwards and a cousin found McCarter and beat him up.

Walter and his friends left the apartment complex but returned later that day to retaliate. Walter's girlfriend, Angelica Mitchell, drove Walter, Cato, Neloms, and Omari Smith to the apartment complex. Mitchell dropped off her four passengers outside the complex. Mitchell testified that she saw that at least Walter and Cato had guns when they got out of the car, but she did not know what the men were planning and proceeded directly to work after she dropped them off. Once outside the car, Walter, Cato, and Omari Smith shot in the direction of Edwards's apartment, where the victim had been standing on the porch. The victim was shot and was pronounced dead after being taken to a hospital.

Several eyewitnesses to the fatal shooting testified at trial. Priscilla Cofer testified that she was standing on Edwards's porch with the victim when she saw Mitchell drive Walter, Cato, Neloms, and Omari Smith through the neighborhood. A few minutes later, she saw Walter, Cato, and Omari Smith shooting toward the apartment.

Edwards's next-door neighbor, Sharyetta Thomas, and the victim's boyfriend, Derrick Thompson, both testified that they saw a shooter who was a light-skinned African-American man with dreadlocks, a description that matched Walter's appearance; Thomas also picked Walter out of a photo array "because he looked like the guy that was shooting."

One of Edwards's neighbors, Tamika Campbell, testified that after hearing the gunshots, she saw three men running through a field, as well as a fourth man putting a gun in his pants; she picked Walter out of a photo array as the man with the gun. Two witnesses testified that Walter asked them to lie to police by saying that he was with them at the time of the shooting.

*Walter v. State*, 304 Ga. 760, 761-762 (822 SE2d 266) (2018).

Additional evidence implicating Smith that was not part of that summary of evidence includes the following: Cofer testified at trial that on the day of the murder, she saw Smith standing to Walter's right and Cato standing to Walter's left, and that all three men were "shooting" in the direction of Cofer and her friends, who had been on the porch of Edwards's apartment. On cross-examination, she confirmed that she was "sure" that she saw Smith shooting. Also, in the days following the shooting, Cofer identified Smith, along with each of the other defendants, out of photographic lineups as the

4

individuals she saw riding together in Mitchell's car minutes before the shooting.[2]

In addition to the direct evidence of Cofer's identification of Smith as a shooter, other circumstantial evidence indicated that Smith participated in the crimes. For example, Walter's sister testified that shortly after the time of the shooting, Smith and Cato came to her house, which was near Edwards's apartment complex. According to Walter's sister, Smith and Cato appeared to be out of breath, as if they had been running. She also noted that Cato looked scared, "like he seen a ghost"; that Smith changed his shirt; and that neither was willing to say where Walter was.

In his first enumeration of error, Smith contends that the evidence adduced at trial was insufficient to support his convictions. Specifically, Smith argues that the "manifest weight of the evidence" showed that it was "extremely unlikely" that he committed the crimes. Smith further argues that the only evidence that he was a

---

[2] At trial, Cofer testified that she picked Smith out of the photographic lineup "because I seen him . . . shooting at me."

shooter was the testimony of Cofer, which he says was inconsistent with prior statements that she made to a 911 operator, a news reporter, and to law enforcement.[3]

When evaluating challenges to the sufficiency of the evidence, we view the evidence presented at trial in the light most favorable to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Jones v. State*, 304 Ga. 594, 598 (820 SE2d 696) (2018); see also OCGA § 16-2-20 (defining parties to a crime). We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts. *Jones*, 304 Ga.

[3] In particular, Smith focuses on a portion of Cofer's cross-examination testimony where trial counsel impeached her with her prior statements, and, according to Smith, Cofer "essentially recanted her prior testimony against Smith." But upon closer examination, it appears that Cofer became confused by trial counsel's questioning, and it is not apparent that Cofer "recanted" any of her trial testimony identifying Smith as a shooter. Furthermore, Cofer testified that she had not previously given the same account of who and what she saw "because I was scared and I didn't want to have anything to do with it because I got kids and I got a family to protect."

at 598; *Menzies v. State*, 304 Ga. 156, 160 (816 SE2d 638) (2018). "'As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.'" *Williams v. State*, 287 Ga. 199, 200 (695 SE2d 246) (2010) (citation and punctuation omitted).

Here, Cofer testified that she personally observed Smith shooting at her and her friends. Moreover, Mitchell testified that she dropped off Smith and the other defendants together — some of them armed — shortly before the shooting; Campbell observed four men either running or possessing a firearm after the shooting; and Walter's sister's testimony about Smith's and Cato's appearance and behavior after the shooting also inculpated Smith. It was for the jury to assess the credibility of the witnesses — including Cofer — and to resolve any discrepancies in the evidence presented at trial. See *Lewis v. State*, 296 Ga. 259, 260-261 (765 SE2d 911) (2014) (credibility of witness who initially lied to police because she "did not want to get involved . . . is a matter to be decided by the jury that saw and heard the testimony, not by an appellate court reviewing a

7

transcript" (citation and punctuation omitted)).  We conclude that the evidence presented at trial was sufficient to authorize a rational jury to find Smith guilty beyond a reasonable doubt of the crimes for which he was convicted.  See *Jackson*, 443 U.S. at 319.

2.    Smith argues that the trial court abused its discretion in summarily denying Smith's motion to sever.  For the reasons explained below, we disagree.

As we noted in *Walter*, "[w]hen two or more defendants are jointly indicted for non-capital offenses or a capital offense where the State does not seek the death penalty, 'such defendants may be tried jointly or separately in the discretion of the trial court.'"  304 Ga. at 762 (quoting OCGA § 17-8-4 (a)).  In ruling on a motion to sever, a trial court should consider: "'(1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses.'"  Id. at 763 (quoting *Herbert v. State*, 288 Ga. 843, 845 (708 SE2d 260) (2011)).  The "mere presence of antagonistic defenses" or "possibility that a

8

separate trial would give [a defendant] a better chance of acquittal"
is insufficient to show an abuse of discretion. *Palmer v. State*, 303
Ga. 810, 814-815 (814 SE2d 718) (2018) (citations and punctuation
omitted). Rather, the defendant bears the burden of showing that
"'a joint trial was so prejudicial as to amount to a denial of his right
to due process.'" Id. at 815 (quoting *Marquez v. State*, 298 Ga. 448,
450 (782 SE2d 648) (2016)); see also *Walter v. State*, 304 Ga. 760,
763 (822 SE2d 266) (2018). We review a trial court's decision to
grant or deny a severance motion for an abuse of discretion. *Palmer*,
303 Ga. at 814-815.

On appeal, Smith argues that the trial court should have
granted his motion to sever because the evidence against him and
against Neloms was "far less compelling" than the evidence against
Walter, and because both he and Neloms had a trial strategy to
implicate each other as the "third" gunman who acted with Walter
and Cato. As a result, Smith argues, his defense and Neloms's
defense were so antagonistic that they were "mutually exclusive."
But we have already considered and rejected on direct appeal

9

Walter's similar argument that co-defendants' arguments implicating each other "were 'not merely antagonistic' but were 'mutually exclusive,'" concluding "that is a distinction without a difference under our case law." *Walter*, 304 Ga. at 763.

Smith also argues that there was a high risk the jury might become confused and erroneously consider the evidence against any one of the co-defendants as evidence against all of them. But Smith fails to make that showing. Indeed, Smith's argument presumes that one of the four co-defendants must not have been a shooter, and that Smith therefore should not have stood trial with the other three co-defendants, whom he asserts were the shooters. But because the State presented evidence at trial that the co-defendants acted in concert,[4] it was not required under the applicable law on party to a crime to show that any specific co-defendant physically possessed a weapon for that defendant to be convicted of felony murder or of the predicate offense of aggravated assault as a party to a crime. See

---

[4] Smith also argues, without citing any authority in support, that it was inappropriate for the State to "treat[ ] the defendants as a group in closing argument."

*Smith v. State*, 277 Ga. 95, 95 (586 SE2d 629) (2003) (affirming defendant's conviction, as party to a crime of felony murder, after a joint jury trial; although an accomplice shot the victim and defendant was not the shooter, the defendant was part of the group that ambushed the victim).  For example, in *McClendon v. State*, 299 Ga. 611, 615 (791 SE2d 69) (2016) we recognized that when "all three defendants were largely charged with the same offenses that stemmed from the same evidence and fact pattern"; "the jury was instructed on mere association, mere presence, and parties to a crime"; and "the jury returned a separate verdict for each defendant pursuant to the trial court's instruction," there was "no indication that the jury confused the evidence or the law applicable" to the defendants, and the trial court did not abuse its discretion by denying a defendant's motion to sever. The same is true here, where the jury was charged on party to a crime — as well as mere association and mere presence — for all three co-defendants and returned separate verdicts for each defendant.  Moreover, "the fact that the evidence as to one of [the] co-defendants is stronger does

11

not demand a finding that the denial of a severance motion is an abuse of discretion, where there is evidence showing that the defendants acted in concert." *Strozier v. State*, 277 Ga. 78, 81 (586 SE2d 309) (2003) (citation and punctuation omitted). See also *Palmer*, 303 Ga. at 815 ("In case after case where co-defendants acted in concert, [this Court has] found that severance was not required simply because the defendant argued about identity or the co-defendant blamed — or even put forth evidence against — the defendant.").[5] We therefore see no abuse in the trial court's discretion in denying Smith's motion to sever, and his enumeration of error fails.

3.   Smith argues that his trial counsel was ineffective for failing to object to the trial court's jury charge on conflicts in testimony, which Smith contends was misleading and highly

---

[5] Smith argues that this potential for confusion was exacerbated by Cato's mistrial, which reduced the number of defendants in Smith's trial to three, which he argues corresponded to the State's evidence about the number of actual gunmen involved in the shooting. But we have held before that a jury, "'in reaching different verdicts as to each co-defendant, proved itself amply capable of distinguishing the evidence relevant to each.'" *Kitchens v. State*, 296 Ga. 384, 387 (768 SE2d 476) (2015) (quoting *Thorpe v. State*, 285 Ga. 604, 609 (678 SE2d 913) (2009)).

prejudicial under the specific facts of this case.  We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was deficient and that the deficient performance resulted in prejudice to the defendant.  *Strickland v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010).  To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." (citation and punctuation omitted) *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see also *Strickland*, 466 U.S. at 687-688.  This requires a defendant to overcome the "strong presumption" that trial counsel's performance was adequate.  *Marshall v. State*, 297 Ga. 445, 448 (774 SE2d 675) (2015) (citation and punctuation omitted).  To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different.

*Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

Here, Smith complains about his trial counsel's failure to object to the court's jury charge on conflicts in evidence, which was in fact the pattern jury charge at the time of Smith's trial in 2010:

> When you consider the evidence in this case, if you find a conflict, you should settle this conflict, if you can, without believing that any witness made a false statement.
>
> If you cannot do so, then you should believe that witness or those witnesses whom you think are best entitled to belief.

Pattern Charge 1.31.20, Suggested Pattern Jury Instructions, Volume II, Criminal Cases (4th ed. 2007). Smith argues that because neither he nor any of his co-defendants presented any witness testimony or other evidence at trial, this charge prejudiced him by effectively instructing the jury that it "should believe" at

14

least one of the State's witnesses. And Smith argues that his counsel should have noticed the problem because the pattern instruction in effect at the time of his trial was preceded by the warning: "*Caution: If the defendant offers no evidence see* Noggle v. State, *256 Ga. 383, 385-86(4) (1986).*"

But in *Mallory v. State*, 271 Ga. 150 (517 SE2d 780) (1999), this Court squarely held that a jury charge "that if there were a conflict between the testimony of witnesses, it would be the jury's duty to resolve that conflict if it could without imputing false statements to either witness, but that if the conflict could not be so resolved, the jury was to decide which witness to believe," was not erroneous because it "contains no suggestion that an unimpeached witness must be believed, but merely urges the jury to attempt to reconcile conflicting testimony before considering the credibility of witnesses." Id. at 151. Likewise, after Smith's trial, in a different case called *Smith v. State*, 292 Ga. 588 (740 SE2d 129) (2013), we again concluded that the same pattern instruction "did not require that the jury believe the testimony of any witness, whether impeached or

unimpeached," even when the defense in that case, like the defense here, presented no witness testimony or other evidence at trial. Id. at 590.

With respect to Smith's argument about the *Noggle* warning in the pattern jury instructions, he fails to acknowledge this Court's conclusion that an instruction like the one at issue here is "distinctly different from the charge disapproved in *Noggle*" because that charge, unlike the one at issue here and in *Mallory*, "established a presumption that witnesses speak the truth unless they are impeached, that is, that an unimpeached witness must be believed." *Mallory*, 271 Ga. at 151; see also *Smith*, 292 Ga. at 590 ("The charge was not a 'presumption of truthfulness' charge." (citation and punctuation omitted)); *Guyton v. State*, 281 Ga. 789, 791 (642 SE2d 67) (2007) (distinguishing *Noggle* and following *Mallory*); *Sedlak v. State*, 275 Ga. 746, 748 (571 SE2d 721) (2002) (same). And even though the entry for conflicts in evidence in the more recent editions of the Suggested Pattern Jury Instructions now states that "*[t]here is no support for this former charge in current law*" (citing *Noggle*,

256 Ga. at 383)[6] — we cannot say that Smith's counsel performed in an objectively unreasonable way by failing to object to a pattern jury instruction that had been approved by controlling case law at the time of Smith's trial in 2010.[7]  See *Mallory*, 271 Ga. at 151 (approving charge in 1999); *Guyton*, 281 Ga. at 791 (approving charge in 2007); see also *Rai v. State*, 297 Ga. 472, 481 (775 SE2d 129) (2015) (no error in giving charge that substantially tracked the pattern jury instruction on conflicts in testimony that was "in effect at [the] time" of the defendant's trial in 2008).  Moreover, because the change in the suggested pattern jury instructions described above is not a change in case law, which remains binding, Smith's

---

[6] It appears that the suggested pattern jury instructions had included the conflicts in evidence charge until a January 2013 update removed it.  See *Wilhite v. State*, 337 Ga. App. 324, 325 (787 SE2d 293) (2016).

[7] This is especially true where, as here, trial counsel also testified at the hearing on Smith's motion for new trial that, "I thought this charge — I thought the conflict," between Cofer's testimony identifying Smith as a gunman, and presumably, testimony to the contrary "would work in our favor" because of Cofer's equivocation at trial.  Because trial counsel's "decisions regarding trial tactics and strategy" were not "so patently unreasonable that no competent attorney would have followed such a course," *Davis v. State*, 299 Ga. 180, 183 (787 SE2d 221) (2016) (citation and punctuation omitted), trial counsel did not perform deficiently by not objecting to the jury charge at issue.

17

argument on appeal that his counsel was deficient would require a change, or at least a clarification, of that precedent to prevail. *Esprit v. State*, 305 Ga. 429, 438 (826 SE2d 7) (2019) ("A criminal defense attorney does not perform deficiently when he fails to advance a legal theory that would require 'an extension of existing precedents and the adoption of an unproven theory of law.'") (quoting *Williams v. State*, 304 Ga. 455, 458 (818 SE2d 653) (2018)); *Rhoden v. State*, 303 Ga. 482, 486 (813 SE2d 375) (2018) ("[T]here is no requirement for an attorney to prognosticate future law in order to render effective representation. . . . Counsel is not obligated to argue beyond existing precedent.") (citations and punctuation omitted).[8]

Given the existing precedent at the time of Smith's trial, the instruction Smith complains of now on appeal was not objectionable. And because "[d]eficient performance is not shown by counsel's failure to raise a meritless objection," *Evans v. State*, 306 Ga. 403, 411 (831 SE2d 818) (2019) (citation and punctuation omitted),

---

[8] Smith in fact undercuts his own argument by admitting on appeal that this case "presents an opportunity" for this Court to "put to rest [this] archaic jury charge."

18

Smith's claim of ineffective assistance of counsel fails.

4.    Smith argues that the trial court erred in denying Smith's motion for a continuance of the hearing on his motion for new trial so that Smith could produce an alibi witness, Kristen Allen, to testify at that hearing.  In the alternative, Smith argues that his counsel was constitutionally ineffective for failing to investigate and present Smith's alibi defense.  Both arguments fail.

OCGA § 17-8-25 sets forth certain requirements an applicant must meet to obtain a continuance based on an absent witness:

> In all applications for continuances upon the ground of the absence of a witness, it shall be shown to the court that the witness is absent; that he has been subpoenaed; that he does not reside more than 100 miles from the place of trial by the nearest practical route; that his testimony is material; that the witness is not absent by the permission, directly or indirectly, of the applicant; that the applicant expects he will be able to procure the testimony of the witness at the next term of the court; that the application is not made for the purpose of delay but to enable the applicant to procure the testimony of the absent witness; and the application must state the facts expected to be proved by the absent witness.

Id.  "All applications for continuances are addressed to the sound legal discretion of the court," OCGA § 17-8-22, and this Court will

19

not reverse the trial court's decision to grant or deny a continuance absent a clear abuse of that discretion. *Morris v. State*, 303 Ga. 192, 194 (811 SE2d 321) (2018).

At Smith's motion for new trial hearing, his counsel informed the court that "there may be a third witness, Kristen Allen. . . . I have not been able to reach her today. If she does not show up, I may ask for a continuance." When the court inquired, "have you got her under subpoena?" counsel responded, "I sent it to her by e-mail, your honor. I was not able to locate a physical address for her. . . . She is not responding to my phone calls today." Counsel then moved for a continuance "to get Ms. Allen here," which the trial court denied, stating "well, I'm sorry that she didn't appear. She is apparently the mother of the defendant's child. If she wanted to be here and testify, I believe she would have been, and you have been in touch with her and she's not here. . . . I'm denying it."

Here, the record shows that motion for new trial counsel did not properly serve a subpoena on Allen. Indeed, e-mail is not a proper means of serving a subpoena under OCGA § 24-13-24, and

20

Smith makes no assertion that he attempted to subpoena Allen as required by that statute.[9] And when a statutory requirement for a continuance has not been met, a trial court does not abuse its discretion by denying the requested continuance. See, e.g., *Cain v. State*, 277 Ga. 309, 311 (588 SE2d 707) (2003) ("Since neither witness had been subpoenaed by the defense and counsel was unable to say where the witnesses were, we see no abuse of discretion in the denial of a continuance."); *Spencer v. State*, 260 Ga. 640, 652 (398 SE2d 179) (1990) (no abuse of discretion denying continuance to await arrival of unsubpoenaed witness) (citing OCGA § 17-8-25); *Wilson v. State*, 250 Ga. 630, 637-638 (300 SE2d 640) (1983) (no abuse of discretion in denying continuance on basis of two absent witnesses who had been subpoenaed but not served because they could not be located, and where defendant failed to demonstrate that

---

[9] OCGA § 24-13-24 provides:

A subpoena may be served by any sheriff, by his or her deputy, or by any other person not less than 18 years of age. Proof may be shown by return or certificate endorsed on a copy of the subpoena. Subpoenas may also be served by registered or certified mail or statutory overnight delivery, and the return receipt shall constitute prima-facie proof of service. Service upon a party may be made by serving his or her counsel of record.

even if a continuance had been granted, he would have been able to locate them).

Moreover, Smith's alternative argument — that his trial counsel were ineffective for failing to investigate and present Smith's alibi defense that he was with Allen the day of the murder — also fails. That is because Smith's senior co-counsel, who sat second-chair and supervised lead counsel during the trial, testified at Smith's motion for new trial hearing that senior co-counsel decided not to pursue an alibi defense because "alibis that cite girlfriends don't work in Fulton County. . . . They don't work at all; they don't." Senior co-counsel further testified that because there were "credible witnesses" that placed Smith at the crime scene, senior co-counsel chose to pursue "a credible argument" that Smith was merely present but "not involved in the crime." Senior co-counsel testified that if he put forth Smith's alibi that he was with his girlfriend at the time of the crime, and thus argued that Smith was not even present at the crime scene, "then the jury will look at me like I'm crazy. So I did what was best for Mr. Smith knowing

22

that those type of alibis don't work."  Moreover, Smith's lead trial counsel also testified at the motion for new trial hearing that she and senior co-counsel "decided not to go into" Smith's alibi "in our trial strategy" because they hoped to keep out phone records of Smith and his girlfriend that "were not good for us."[10]

"A decision as to which defense witnesses to call is a matter of counsel's trial strategy and tactics and will not support a claim of ineffective assistance of counsel unless it is so unreasonable that no competent attorney would have made the decision under the circumstances." *Moss v. State*, 298 Ga. 613, 619 (783 SE2d 652) (2016) (citation and punctuation omitted).  Given the testimony recounted above, we cannot say that trial counsel's strategy in this case was so patently unreasonable that no competent attorney would have followed it.  See *Moss*, 298 Ga. at 618-619 (trial counsel

---

[10] Smith counters that his phone records were admitted into evidence at trial anyway.  They were, and the State relied on them during closing argument as evidence of Smith's guilt.  But the State's reliance on the phone records as potentially inculpatory evidence only supports the reasonableness of Smith's trial counsel's strategy to keep the phone records out of evidence, whether or not that strategy was ultimately successful.

strategic decision to not call alibi witness was not deficient where counsel testified that he thought the alibi witness "didn't come across as a very credible person," and that "if you're going to put up an alibi, it better be something that sticks because if you start putting up weak evidence before the jury, it makes you look desperate" (punctuation omitted)).  Smith has therefore failed to show that his trial counsel was constitutionally deficient, and his alternative claim of ineffective assistance of counsel fails.

*Judgment affirmed.  All the Justices concur.*

DECIDED FEBRUARY 28, 2020.
Murder. Fulton Superior Court. Before Judge Ellerbe.
*Jacob D. Rhein*, for appellant.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Stephany J. Luttrell, Dustin J. Lee, Assistant District Attorneys;*

24

*Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.