308 Ga. 706
FINAL COPY

S20A0563.  SANTANA v. THE STATE.

WARREN, Justice.

Cuevas Carlos Santana was convicted of malice murder and other crimes in connection with the shooting deaths of Israel Espinoza Mendoza, Vincente Soto Chavez, and Renato Soto Valencia.[1]  On appeal, Santana argues that the evidence was

---

[1] Santana was indicted by a DeKalb County grand jury with Edwin Vega Landero and Oscar Magdaleno for the malice murder of Mendoza (Count 1); felony murder of Mendoza predicated on aggravated assault (Count 2); malice murder of Chavez (Count 3); felony murder of Chavez predicated on aggravated assault (Count 4); felony murder of Chavez predicated on false imprisonment (Count 5); malice murder of Valencia (Count 6); felony murder of Valencia predicated on aggravated assault (Count 7); felony murder of Valencia predicated on false imprisonment (Count 8); aggravated assault of Mendoza (Count 9); aggravated assault of Chavez (Count 10); aggravated assault of Valencia (Count 11); false imprisonment of Chavez (Count 12); and false imprisonment of Valencia (Count 13).  Santana and Landero were tried together before a jury in September 2016.  On September 23, 2016, the jury found Santana guilty on all 13 counts and found Landero not guilty on all counts.  On September 30, 2016, the trial court sentenced Santana to life in prison without the possibility of parole for Counts 1, 3, and 6 to run consecutively and consecutive 10-year terms for Counts 12 and 13.  Counts 2, 4, 5, 7, and 8 were vacated by operation of law, and Counts 9, 10, and 11 were merged with Counts 1, 3, and 6, respectively.  Santana timely filed a motion for new trial, which he amended through new counsel.  After holding a hearing on the motion, the trial court denied it on October 7, 2019.  Santana timely

insufficient to support his convictions, that the trial court erred by declining to grant Santana a new trial on the general grounds, and that trial counsel provided ineffective assistance. We disagree and affirm Santana's convictions.

Viewed in the light most favorable to the jury's verdicts, the evidence presented at Santana's trial showed that at approximately 9:00 p.m. on November 8, 2010, police responded to a 911 call reporting a shooting at the Avenues Apartments complex in DeKalb County. When police arrived, they found a male who was later identified as Mendoza in the hallway of Building A of the complex. He had been shot in the chest and the head and died after being taken to the hospital. Police also discovered a car near Building J of the complex that had a blood trail leading from it to the apartment buildings.[2] The passenger-side door of the car was open, and a pool of blood was in the passenger's seat. Several shell casings, a few live

---

filed a notice of appeal, and the case was docketed in this Court to the term beginning in December 2019 and submitted for a decision on the briefs.

[2] The car was later connected to the crime after documentation belonging to Mendoza and Chavez was found in it during a search.

.40-caliber rounds, and two t-shirts were located in the parking lot near the car and the blood trail.

The next morning, police returned to the complex to conduct a canine search for potential evidence.  During the search, a maintenance worker contacted police and stated that he had just seen a body in the bedroom of Apartment C-11.  According to the worker, after he had gone into Apartment C-12 to do maintenance work, he saw that the door to Apartment C-11 was cracked open and went inside the apartment after becoming suspicious because he knew the apartment was supposed to be vacant.  Police then searched Apartment C-11 and discovered a male, later identified as Chavez, in a bedroom lying face down with his arms and ankles bound with duct tape.  He was deceased with two gunshot wounds to the head.  Additionally, police found a second deceased male, later identified as Valencia, in the bathroom.  His arms and ankles were also bound, and he had two gunshot wounds to the head.  Bullet fragments and a shell casing, which were later identified by a firearms expert as coming from a 9mm gun, were located in the

bathroom.  Latent fingerprints were lifted from the bathroom.

After failing to identify any suspects, the case went cold.  Then, in June 2012, Ariel Jacquez-Cruz, a taxi driver, came forward and told police that Santana, Landero, and Magdaleno had committed the triple homicide and identified the three men in photographic lineups.

At trial, medical examiners testified that all three victims died as a result of gunshot wounds.  Cruz testified that he met Santana and his co-defendant Landero when Cruz drove them in his taxi and that Santana was a frequent passenger.  Cruz also testified that Santana and Landero were involved in distributing drugs, had carried drugs in his taxi multiple times, and that he had once observed Santana use a .40-caliber gun.  During these taxi rides, Cruz testified, Santana confessed to Cruz on multiple occasions that he was involved in the triple homicide at the Avenues Apartments.  Cruz also testified that after Santana was arrested, Santana called him from jail to ask Cruz to locate Santana's gun and sell it.  On cross-examination, defense attorneys for Santana and Landero

examined Cruz about being a confidential informant and the fact that "shortly before" Cruz came forward and identified Santana, Landero, and Magdaleno as the perpetrators, police had searched Cruz's house for drugs.

A fingerprint expert testified at trial that he examined all of the latent prints given to him, including elimination prints[3] and prints taken from the three suspects, and matched Santana's fingerprint and palm print to latent prints taken from the bathroom sink area of Apartment C-11. On cross-examination, the expert admitted that Santana's palm print was the only palm print he received for analysis, and that the print he matched to Santana was not of good enough quality to be put into a computerized system, meaning the expert could only determine there was a match by performing a subjective comparison using a "hand-held magnifier."

Additionally, a detective testified at trial that in the course of his investigation, he listened to recordings of phone calls made by

---

[3] The expert explained that he took all of the apartment complex employees' fingerprints to compare them with the lifted latent prints so he could eliminate the employees as suspects.

Santana from jail. Although the calls were in Spanish, the detective testified that he was bilingual in Spanish and English and that he identified Santana's voice on the calls because he had interviewed Santana shortly before listening to the calls. Although a recording of the jail calls was not formally translated to English word-for-word or played for the jury, the detective testified that in one phone conversation, Santana told his daughter that he needed to get in touch with Landero to tell him that the police pressured Santana into identifying Landero and that Santana and Landero needed to get their stories straight.

1. Santana argues that the evidence presented at trial was not sufficient to support his convictions. Specifically, Santana argues that the evidence is insufficient given that Cruz "failed to disclose any information to the police until it was beneficial to him," and he was the "only" witness to testify that Santana was involved in the murders.

When evaluating challenges to the sufficiency of the evidence, we view the evidence presented at trial in the light most favorable

to the verdicts and ask whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Jones v. State*, 304 Ga. 594, 598 (820 SE2d 696) (2018). "We leave to the jury the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts." *Smith v. State*, 308 Ga. 81, __ (839 SE2d 630) (2020). "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." Id. (citation and punctuation omitted).

Here, Cruz testified that Santana told him about Santana's involvement in the three murders at the Avenues Apartments on multiple occasions and that Santana called Cruz from jail to ask Cruz to help Santana locate his gun and sell it. A fingerprint expert testified that latent prints that were lifted from the crime scene matched Santana's fingerprint and palm print, and a detective testified that while Santana was in jail, he told his daughter in a

phone conversation that he needed to get in touch with Landero to tell him that the police pressured Santana into identifying Landero and that Santana and Landero needed to get their stories straight. It was for the jury to assess the credibility of the witnesses — including Cruz — and to resolve any discrepancies in the evidence presented at trial. See *Smith*, 308 Ga. at __; see also *Boswell v. State*, 275 Ga. 689, 691 (572 SE2d 565) (2002) (explaining that the jury may decide "what credibility and weight to give" expert opinions). Accordingly, we conclude that the evidence presented at trial was sufficient to authorize a rational jury to find Santana guilty beyond a reasonable doubt of the crimes for which he was convicted. See *Jackson*, 443 U.S. at 319.

2. Santana contends that the trial court erred in denying his motion for new trial on the general grounds. Specifically, Santana argues that the trial court abused its discretion by failing to exercise its discretion and that, to the extent the trial court did exercise its discretion, the court abused it by improperly doing so.

It is well established that, even when the evidence is legally

sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to . . . the principles of justice and equity," OCGA § 5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence," OCGA § 5-5-21. See also *White v. State*, 293 Ga. 523, 524 (753 SE2d 115) (2013). "When properly raised in a timely motion, these grounds for a new trial — commonly known as the 'general grounds' — require the trial judge to exercise a broad discretion to sit as a thirteenth juror." Id. (citation and punctuation omitted). A trial court's discretion is "substantial," and the trial judge "must consider some of the things that she cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence," when exercising such discretion. Id. at 524-525 (citation and punctuation omitted).

To the extent Santana claims that the trial court erred in failing to exercise its discretion as the thirteenth juror, see *Edwards v. State*, 308 Ga. 176, 180 (839 SE2d 599) (2020), we disagree. In its order denying Santana's motion for new trial, the trial court stated

that it "considered the legal sufficiency of the evidence when combined with any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence," and that it "further considered the merits of [the d]efendant's argument and brief and, in an exercise of discretion, [found] that the verdict was neither 'contrary to evidence and the principles of justice and equity,' under OCGA § 5-5-20 nor 'decidedly and strongly against the weight of the evidence' under OCGA § 5-5-21." Thus, "there is no indication that the court failed to exercise its discretion in denying the new trial motion." *Wilson v. State*, 302 Ga. 106, 109 (805 SE2d 98) (2017); see also *Edwards*, 308 Ga. at 180.

To the extent Santana contends that the trial court abused its discretion or otherwise erred in exercising its discretion as the thirteenth juror, his argument also fails. Santana specifically argues that the trial court should have granted him a new trial because the evidence against him rested on "the questionable, biased, unreliable testimony of a 'professional' snitch" (Cruz) and because the fingerprint expert "admitted that the United States

does not have a minimum number of points that must be matched before an expert can declare a match" and that his analysis was "subjective in nature." But "[w]hether to grant a new trial under OCGA § 5-5-21 is committed solely to the discretion of the trial court, and when an appellant asks this Court to review a trial court's denial of a new trial on this ground, we review the case under the [sufficiency] standard set forth in *Jackson v. Virginia*." *Williams v. State*, 307 Ga. 689, 692 (838 SE2d 314) (2020). As explained above, the evidence presented at trial was sufficient to authorize a rational jury to find Santana guilty beyond a reasonable doubt of the crimes for which he was convicted. See id. Accordingly, his enumeration of error fails.

3. Santana argues that his trial counsel provided ineffective assistance by (a) failing timely to file a motion to exclude fingerprint testimony and (b) failing to secure a "proper translation" of Santana's phone call recordings from jail. We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant generally must show that counsel's performance was

deficient and that the deficient performance resulted in prejudice to the defendant. See *Strickland v. Washington*, 466 U.S. 668, 687-695 (104 SCt 2052, 80 LE2d 674) (1984); *Wesley v. State*, 286 Ga. 355, 356 (689 SE2d 280) (2010). To satisfy the deficiency prong, a defendant must demonstrate that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." *Romer v. State*, 293 Ga. 339, 344 (745 SE2d 637) (2013); see *Strickland*, 466 U.S. at 687-688. To satisfy the prejudice prong, a defendant must establish a reasonable probability that, in the absence of counsel's deficient performance, the result of the trial would have been different. See *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." *Lawrence v. State*, 286 Ga. 533, 533-534 (690 SE2d 801) (2010).

(a) Santana argues that his trial counsel was ineffective for

failing to file a *Harper* motion[4] to exclude fingerprint testimony the State intended to present at trial.  We disagree.

At trial, an expert print examiner, who had examined the print evidence in the case, testified that a latent fingerprint and palm print lifted from the crime scene matched Santana's fingerprint and palm print.  Trial counsel did not file any pretrial motions seeking to exclude the testimony.  At the hearing on Santana's motion for new trial, trial counsel testified that "in hindsight," he would have filed a *Harper* motion to challenge the fingerprint evidence but that "at the time" of trial he "had zero faith in [the fingerprint evidence] being excluded."  He testified that his cross-examination of the fingerprint expert was "one of the better expert cross-examinations [he had] probably ever done."  His co-counsel testified at the motion for new trial hearing that he did a "good bit of research" into the fingerprint evidence and that they "retained an expert witness" who prepared a report that aided trial counsel in his cross-examination preparation.  In its order denying Santana's motion for new trial,

---

[4] See *Harper v. State*, 249 Ga. 519 (292 SE2d 389) (1982).

the trial court concluded that "[t]here was no deficient performance as relating to the fingerprint testimony."

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Mosley v. State*, 307 Ga. 711, 720-721 (838 SE2d 289) (2020) (citation and punctuation omitted). In *Harper v. State*, we explained that "it is proper for the trial judge to decide whether [a] procedure or technique in question has reached a scientific stage of verifiable certainty," basing its determination on "exhibits," "treatises," "the rationale of cases in other jurisdictions," or "evidence presented to it at trial by the parties," including expert testimony. 249 Ga. 519, 525-526 (292 SE2d 389) (1982). We also stated that "[o]nce a procedure has been recognized in a substantial number of courts, a trial judge may judicially notice, without receiving evidence, that the procedure has been established with verifiable certainty." Id. at 526.

Santana has not made any showing — much less a strong one

—that the fingerprint evidence used in this case has not reached a "scientific stage of verifiable certainty," *Harper*, 249 Ga. at 525, such that the evidence would have likely been excluded under the *Harper* standard. Indeed, we have already recognized that fingerprint evidence is "not novel, and has been widely accepted in Georgia courts." *Whatley v. State*, 270 Ga. 296, 299 (509 SE2d 45) (1998); see also *Lattarulo v. State*, 261 Ga. 124, 126 (401 SE2d 516) (1991) (noting the "widespread" acceptance of fingerprint evidence). And to the extent Santana asserts that the specific fingerprint methodology or analysis used in this case is not scientifically supported, he has offered no argument to support such an assertion.

Moreover, to the extent that Santana's argument rests on trial counsel's testimony that he would have filed a *Harper* motion "in hindsight," that argument fails because hindsight "has no place" in the *Strickland* analysis. See *Shaw v. State*, 292 Ga. 871, 876 n.9 (742 SE2d 707) (2013) ("[H]indsight has no place in an assessment of the performance of trial counsel, and a lawyer second-guessing his own performance with the benefit of hindsight has no significance

for an ineffective assistance of counsel claim.") (citation and punctuation omitted). Accordingly, because Santana has failed to show that the fingerprint evidence would have been suppressed had trial counsel filed a motion, we agree with the trial court's conclusion that trial counsel's performance was not deficient. See *Moore v. State*, 293 Ga. 676, 679 (748 SE2d 419) (2013) (concluding that "the failure to raise a meritless motion or objection is not ineffective assistance of counsel" where "a motion to suppress the fingerprint evidence and an objection to its admission at trial would have been without merit").

(b) Santana argues that his trial counsel was ineffective for failing to obtain a "proper translation" of Santana's recorded jail calls, which trial counsel had informally translated through the "internal translation" of a native Spanish speaker in his office, but for which he had not requested a "certified translation of the recordings." We disagree that Santana's trial counsel was constitutionally ineffective on this basis.

In its order denying Santana's motion for new trial, the trial

court found that Santana failed to show prejudice with respect to his claim of ineffective assistance because Santana had neither "pointed to [any]thing that was mistranslated by the officer who testified about the jail calls" nor "pointed to anything that might have been contained within the jail calls that was exculpatory and that would have been discovered and admitted if only the calls had been translated." We agree with the trial court. Even assuming — without deciding — that trial counsel was deficient for failing to obtain a formal, translated transcript of the jail calls, Santana has not alleged that any testimony presented at trial about the calls was mistranslated or that anything contained in the jail calls would have been exculpatory. As a result, he has not shown that but for trial counsel's alleged deficiency, the result of the trial would have been different. See *Howard v. State*, 298 Ga. 396, 399 (782 SE2d 255) (2016) (concluding that the defendant could not show prejudice where he argued that trial counsel was ineffective for failing to have certain blood evidence from the crime scene tested because the defendant "did not have the blood tested post-trial" and thus had

"not shown that this evidence would have been favorable to his defense" and that a reasonable probability existed that "the result of the trial would have been different"); *Valentine v. State*, 293 Ga. 533, 537 (748 SE2d 437) (2013) (concluding that the defendant failed to establish prejudice "by showing a reasonable probability that the result of his trial or sentencing would have been any different" where he argued that trial counsel was ineffective for failing to seek a psychological evaluation of the defendant but "presented no expert testimony showing what a pretrial evaluation could have revealed which would have been favorable to the defense had counsel requested one") (citation and punctuation omitted); *Shank v. State*, 290 Ga. 844, 848 (725 SE2d 246) (2012) (concluding that the defendant failed to establish prejudice where he argued that "his counsel did not adequately investigate the case" but "failed to show that a more thorough investigation would have yielded any significant exculpatory evidence").  Santana's ineffective assistance claim therefore fails.

*Judgment affirmed.  All the Justices concur.*

DECIDED APRIL 20, 2020 --- RECONSIDERATION DISMISSED MAY 18, 2020.

Murder. DeKalb Superior Court. Before Judge Hydrick.

*Ruth R. McMullin*, for appellant.

*Sherry Boston, District Attorney, Deborah D. Wellborn, Elizabeth H. Brock, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Leslie A. Coots, Assistant Attorney General*, for appellee.