311 Ga. 378
FINAL COPY

S21A0041. DRAUGHN v. THE STATE.
S21A0441. LEVATTE v. THE STATE.
S21A0494. HAYWARD v. THE STATE.


PETERSON, Justice.

Demarco Draughn, Xavier Levatte, and Benny Hayward appeal their malice murder convictions for the stabbing death of fellow inmate Bobby Ricks.[1] Draughn and Levatte challenge the

---

[1] The crimes occurred on October 11, 2017. On September 25, 2018, a Hancock County grand jury indicted Draughn, Levatte, Hayward, and Diante Thompson for malice murder, felony murder, and aggravated assault. Following a joint trial held from July 30 to August 2, 2019, a jury found Draughn, Levatte, and Hayward guilty on all counts. Thompson apparently was tried and convicted separately after the trial of his co-indictees; his attorney was ill on the morning of the joint trial. Draughn and Hayward were sentenced to life without parole for malice murder, to be served consecutively to sentences they were already serving for other crimes; the remaining counts merged or were vacated by operation of law. Levatte was sentenced to life without parole for malice murder, to be served concurrently with a sentence he was already serving for another crime; the remaining counts merged or were vacated by operation of law. Draughn, Levatte, and Hayward timely filed motions for new trial, which they later amended. The trial court denied Draughn's and Hayward's motions in separate orders filed on May 26, 2020, and it denied Levatte's motion in an order filed on July 15, 2020. Draughn and Hayward timely filed notices of appeal, and their cases were docketed to this Court's term beginning in December 2020 and submitted for decisions on the briefs. Levatte timely filed a notice of appeal to the Court of Appeals, which then granted his motion to transfer his appeal to this Court. His case was then

sufficiency of the evidence presented at their joint trial to support their convictions. Levatte also argues that the State's mischaracterization of its burden of proof during closing argument amounted to structural error and that his trial counsel was ineffective for failing to object to that mischaracterization. He further contends that the trial court erred by denying his motion to sever and by permitting the prosecutor and a witness to identify him and his co-defendants in a video of the stabbing. Hayward challenges the trial court's permitting lay witness identification of him through the video of the stabbing and still images from the video, as well as the trial court's denial of his own motion to sever and of his request for a charge on simple battery.

We hold that the evidence was sufficient to convict Draughn and Levatte. Levatte's claim that the trial court erred in permitting the State's alleged mischaracterization of its burden of proof during closing argument is waived because Levatte did not object at trial,

docketed to this Court's term beginning in December 2020 and submitted for a decision on the briefs.

2

and Levatte's ineffective assistance claim fails because he failed to show that any error likely affected the outcome of his trial. Levatte's and Hayward's challenges to the trial court's permitting identification of them through a video and through still images from the video fail because the prosecutor's identification of Levatte during opening statements was harmless, the lay-witness identification of Levatte was proper, and any identification of Hayward was cumulative of his identification of himself. The trial court did not abuse its discretion in denying Levatte's and Hayward's respective motions to sever because neither defendant showed that he was prejudiced and denied due process by co-defendants' antagonistic defenses that separate trials may have avoided. Finally, Hayward failed to show that the trial court's denial of his request for a charge on simple battery likely affected the outcome of his trial. We affirm the convictions in all three cases.

The evidence presented at trial showed the following. On October 11, 2017, at approximately 11:15 p.m., Ricks, an inmate at Hancock State Prison, was approached by four inmates while

3

showering in the H-1 housing dormitory of the prison and fatally stabbed. Ricks's murder was captured on surveillance video. Portions of the video were played for the jury, and still images from the video recordings were admitted into evidence as well.

Erica Hood, a corrections officer, was working in the H-1 dorm on the night of the murder. She saw Ricks bleeding profusely and running away from inmates armed with shanks. Officer Hood radioed for the sally-port entrance to the dorm (a boxed-in area with two doors used to control movement between two areas of the prison) to be opened, allowing Ricks and Hood to exit. Ricks was pronounced dead at 12:54 a.m. on October 12 while he was being transported to a hospital. He died as a result of 11 stab wounds.

Officer Hood was substituting in Ricks's dorm on the night that he was killed, and she told investigators that she was able to identify only one of Ricks's attackers, whom she described for the jury as a brown-skinned black male with "black eyes, jagged teeth, and a

4

receding hairline."[2] Jermel Tannahill, an inmate who testified that he witnessed the assault on Ricks, identified Draughn, Levatte, and Hayward in still images from the surveillance video and in court as being among Ricks's assailants. Testimony by Agent Gittins, the lead investigator on the case, showed that the decision to arrest Draughn, Levatte, and Hayward for the murder was based in part on prison official Eric Martin's identification of those three inmates as participants in the attack after viewing the video and an enlarged screenshot.

Patrick Renfroe, an inmate whom investigators initially considered a suspect in Ricks's murder, told an investigator that Hayward and co-indictee Diante Thompson, along with someone he called "Slayer" and other inmates, had killed Ricks. Renfroe also told the investigator that Ricks was killed because he was a member of the Bloods gang and had been engaging in homosexual activity,

---

[2] Although an appellate brief filed by the State says that this description was "eventually shown by photographs" to match that of Diante Thompson, Officer Hood did not identify the attacker by name at trial, and the State does not argue that the attacker Officer Hood described was any of the three defendants in this appeal.

5

which was against the gang's code. The recording of Renfroe's interview with the investigator was played for the jury. In his trial testimony, Renfroe claimed that Levatte was in their shared cell at the time of the attack. Otherwise, Renfroe claimed to recall little about the murder or his statement to officials. Another prison worker, Maquiesha Brown, told the jury that Draughn, Levatte, Hayward, Thompson, and Renfroe were all members of the Bloods gang.

The video recording depicted one of Ricks's assailants removing his own shirt after the attack and leaving it on the dorm floor. Examination of the discarded shirt revealed the presence of Draughn's DNA. Jail staff later located homemade sharp objects, known as shanks, in an enclosed space used to house and conceal plumbing pipes that could be accessed through a hole in the wall of Draughn's cell. DNA testing revealed the presence of Draughn's DNA on the handle of one of the shanks and the presence of Ricks's DNA on the blade of that shank.

Levatte's DNA was not found on any of the physical evidence

6

that was tested, including the shanks. But jail staff located in Levatte and Renfroe's cell a pair of recently cleaned, white tennis shoes and a pair of prison uniform pants with stripes down the leg soaking in a bucket of bleach. Both Levatte and Renfroe told investigators that the shoes and bleached clothing belonged to Renfroe, but the pants had "G9" written inside the waistband; Levatte's nickname was "Glock 9," and a laundry bag in his cell was labeled with this nickname. Moreover, the man whom Tannahill identified as "Glock 9" in enhanced still images from the surveillance video of the attack was wearing white pants and white shoes, and white shoes were not standard-issue uniform for inmates at that time. When interviewed on the morning after the stabbing, Levatte initially claimed that he was alone in his cell during the attack. But when told that he was seen on surveillance video, Levatte admitted to investigators that he came out of his cell but claimed that he saw only the end of the attack.

Hayward told investigators that he was merely "walking past" when the attack occurred, claiming he was wearing shorts at the

time. But investigators found Ricks's blood on the full-length pants that Hayward wore while being interviewed.

1. Draughn and Levatte challenge the sufficiency of the evidence supporting their malice murder convictions. Their claims fail.

When evaluating the sufficiency of evidence as a matter of federal due process under the Fourteenth Amendment to the United States Constitution, the proper standard of review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). We view the evidence in the "light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." *Hayes v. State*, 292 Ga. 506, 506 (739 SE2d 313) (2013) (citation and punctuation omitted).

So viewed, the evidence presented at trial was sufficient for a rational jury to find Draughn and Levatte guilty beyond a reasonable doubt of malice murder. Tannahill, a fellow inmate and eyewitness, identified Draughn and Levatte at trial as two of Ricks's

8

assailants. And testimony established that Martin had also identified Draughn and Levatte as assailants based on the surveillance video of the attack and enhanced still images from the video. Physical evidence connected Draughn and Levatte to the attack, including the shirt one of the attackers discarded that had Draughn's DNA on it; the shank with Draughn's DNA on the handle and Ricks's DNA on the blade found in an enclosed space accessible through a hole in the wall of Draughn's cell; and the recently cleaned white sneakers and bleached white pants with a shortened version of Levatte's nickname written inside the waistband that investigators found in Levatte's cell after the attack and that corresponded with Tannahill's identification of Levatte as the assailant wearing white sneakers. And Levatte gave investigators an inconsistent account of his whereabouts during the attack, initially saying he was in his cell the entire time but changing his story when told that he was seen on the surveillance video. Although there was conflicting evidence as to Draughn and Levatte's involvement, "[i]t is the jury's role to resolve conflicts in the evidence

9

and to determine the credibility of witnesses, and the resolution of such conflicts adversely to the defendant does not render the evidence insufficient." *Hart v. State*, 305 Ga. 681, 683 (827 SE2d 642) (2019) (citation and punctuation omitted). The evidence was sufficient.[3]

2. Levatte contends that the State mischaracterized its burden of proof during closing argument. He also claims that his counsel was ineffective for failing to object to the State's mischaracterization. Any claim of trial court error was waived, and Levatte has failed to show he was prejudiced by counsel's failure to object.

During closing argument, the prosecutor made the following statements regarding the reasonable doubt standard:

> Reasonable doubt is not beyond all doubt. It's not 90 percent or 95 percent. In fact, the Judge will tell you it's not through a moral certainty or a mathematical certainty. You don't have to ring any sort of bell. It's whenever you define the truth.

---

[3] Hayward does not raise the sufficiency of the evidence on appeal, so we do not address it.

Levatte argues that these statements erroneously describe the burden of proof and created a structural error that requires reversal.

(a) Levatte did not object to the statements at trial, so he has waived direct review of the prosecutor's statements on appeal. See *Gates v. State*, 298 Ga. 324, 328-329 (4) (781 SE2d 772) (2016) (unlike evidentiary errors, unobjected to errors "based on improper remarks during closing argument are not subject to review on appeal for plain error").

(b) Levatte also argues that his trial counsel was ineffective for failing to object to the prosecutor's statements about reasonable doubt. For Levatte to prevail on his ineffectiveness claim, he must show (1) that his trial counsel's performance was constitutionally deficient and (2) that he was prejudiced by counsel's deficient performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). If Levatte fails to establish one prong of the *Strickland* test, "we need not examine the other." *Robinson v. State*, 308 Ga. 543, 553 (3) (842 SE2d 54) (2020). To establish prejudice, Levatte "must show that there is a reasonable probability

11

that, but for counsel's unprofessional error[ ], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To determine whether Levatte has shown *Strickland* prejudice, "we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done." *Swanson v. State*, 306 Ga. 153, 163 (2) (b) (829 SE2d 312) (2019) (citation and punctuation omitted).

In support of his ineffectiveness claim, Levatte relies on *Debelbot v. State*, 308 Ga. 165 (839 SE2d 513) (2020), in which we held that defense counsel was ineffective for failing to object to a prosecutor's "clearly wrong" description of reasonable doubt during closing argument.[4] In *Debelbot*, we concluded that the erroneous description may have affected the trial outcome because the case against the two defendants "was almost entirely circumstantial"

---

[4] The prosecutor in that case stated that reasonable doubt "does not mean to a mathematical certainty. . . . You don't have to be ninety percent sure. You don't have to be eighty percent sure. *You don't have to be fifty-one percent sure.*" *Debelbot*, 308 Ga. at 167 (emphasis in original). We explained that although reasonable doubt is not reducible to a specific percentage, it was "obviously wrong" to suggest that reasonable doubt is a lower bar than preponderance of the evidence, which was the implication of "[y]ou don't have to be fifty-one-percent sure." Id.

12

with legal sufficiency of the evidence presenting a "close question[,]" and because the trial court's jury charge on reasonable doubt "did not cure the State's obviously wrong argument" and "may well have been understood by the jury as reinforcing it." Id. at 168-170 (citations and punctuation omitted).

Assuming without deciding that Levatte's trial counsel was deficient for not objecting to the prosecutor's statements about reasonable doubt,[5] Levatte has failed to show a reasonable probability that the result of his trial would have been different but for those statements. First, unlike in *Debelbot*, the case against Levatte was plainly sufficient given that an eyewitness identified Levatte as one of the assailants, Levatte changed his story about his whereabouts during the attack, and the white shoes and pants soaking in bleach with Levatte's nickname written inside the

---

[5] Because of our conclusion that the prosecutor's comments did not prejudice Levatte, we need not decide whether defense counsel was deficient for not objecting. But we do point out that the statements were at the very least inadvisable. See *Debelbot*, 308 Ga. at 169 n.9 ("We admonish lawyers not to confuse jurors by attempting to quantify a standard of proof that is not susceptible of quantification.").

waistband found in Levatte's cell corroborated testimony that he was the assailant with white tennis shoes and suggested that he was trying to destroy evidence. Second, any error in the State's characterization of reasonable doubt was considerably less blatant than the error in *Debelbot* and — unlike in *Debelbot* — was cured by the trial court's instructions to the jury, which explained presumption of innocence, burden of proof, and reasonable doubt accurately and at length. See *Davis v. State*, 294 Ga. 486, 488 (3) (b) (754 SE2d 67) (2014) (where the trial court "fully and correctly instructed the jury on the burden of proof," defense counsel's failure to object to prosecutor's remarks allegedly advocating a lower standard of proof did not prejudice defendant because the outcome of the trial would have been no different even if defense counsel objected). Considering the strength of the evidence against Levatte and the trial court's thorough and correct instructions to the jury, it is unlikely that defense counsel's failure to object to the prosecutor's statements about reasonable doubt affected the outcome of Levatte's

14

trial.[6]

3. Levatte argues that the trial court erred by permitting the prosecutor to identify Levatte, his co-defendants, and the victim from portions of the surveillance video recording shown to the jury during opening statements. Levatte's claim fails because any error was harmless.

Prior to trial, Levatte filed a motion in limine asking the trial court to prevent the State and the State's witnesses from identifying the defendants from a video recording or photograph without first obtaining permission from the trial court outside the jury's presence. Levatte claims that the trial court granted his motion in limine (a point on which the record is unclear) and argues that the State

---

[6] Levatte also argues that his co-defendants' questions during voir dire and statements during closing argument focusing on the preponderance of the evidence, taken together with the prosecutor's statements during closing, confused the jury as to the proper standard. But his co-defendants did not misstate the reasonable doubt standard; instead, they emphasized that it is a higher standard of proof. During voir dire, Hayward's counsel described the difference between the preponderance of the evidence and reasonable doubt standards and asked potential jurors whether they understood the distinction between them. And during closing argument, Draughn's attorney argued that evidence against Draughn did not meet even the preponderance of the evidence standard, much less the reasonable doubt standard.

violated that ruling during its opening statement when the prosecutor played the surveillance video and "identified" Levatte and his co-defendants as the assailants in the video. But even assuming that the trial court granted Levatte's motion in limine and that the State violated the trial court's ruling on the motion, any error was harmless because evidence identifying Levatte and his co-defendants as the individuals conducting the attack and pointing out their positions in still images from the surveillance video was introduced by Tannahill's testimony later in the trial. See *Keever v. Dellinger*, 291 Ga. 860, 861 (3) (734 SE2d 874) (2012) (any error in counsel's statements during opening argument summarizing the testimony of a witness who did not ultimately testify was harmless because the evidence was properly introduced by other witness testimony).

4. Next, Levatte and Hayward argue that the trial court erred by permitting the State to elicit inadmissible testimony that invaded the jury's province to identify the defendants in the surveillance video and enhanced still images from the video. There was no error.

16

Levatte argues that the trial court erred in allowing Tannahill to identify him in still images taken from the surveillance video, contending that opinion evidence as to identification is generally admissible only where average jurors cannot themselves identify whether an individual in a video or still image is the defendant.[7] But Tannahill did not offer opinion evidence; he testified from personal knowledge. Under Georgia's Evidence Code, a lay witness "may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of such matter. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony." OCGA § 24-6-602 ("Rule 602"). We have previously concluded that the pertinent language of Rule 602 tracks that of Federal Rule of Evidence 602, meaning that we "look

---

[7] Levatte appears to be making an argument that Tannahill's identification of him is opinion testimony. Admissibility of opinion testimony falls under OCGA § 24-7-701, which states that non-expert witness testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the witness's perception; helpful to gain a clear understanding of the witness's testimony or determine a fact in issue; and not based on scientific, technical, or other specialized knowledge. See OCGA § 24-7-701 (a) (1)-(3).

to the decisions of the federal appellate courts, particularly the Eleventh Circuit, for guidance in applying this provision." *Kirby v. State*, 304 Ga. 472, 478 (3) (b) n.4 (819 SE2d 468) (2018). Under Federal Rule of Evidence 602, witnesses may testify about events they personally observed. See *United States v. Barnes*, 481 Fed. Appx. 505, 512 (11th Cir. 2012) (officer's testimony about the passenger of a vehicle he pursued was admissible because it was based on personal knowledge).

Here, Tannahill was an eyewitness to the events depicted in the surveillance video. Therefore, Tannahill's testimony identifying the defendants from the still images from the surveillance video was admissible because he was testifying based on his recollection of the stabbing, not providing his opinion. The trial court did not abuse its discretion in allowing Tannahill's identification testimony. See *United States v. Shabazz*, 564 F3d 280, 287 (3d Cir. 2009) (rejecting defendant's claim that witness's identification of defendant in images from a surveillance video was inadmissible as opinion evidence because the witness, who took part in the events depicted

in the video, was testifying from personal knowledge).

Hayward similarly claims that the court erred in allowing "lay witnesses" to identify him from the video and still images from the video, but he does not identify which lay witnesses he is referencing. Regardless, Hayward affirmatively waived his right to appellate review of any such identification testimony because he invited identification of himself from the video: his defense counsel asked Tannahill during cross-examination to identify Hayward in the video and used this identification to later argue to the jury that Hayward's position during the attack showed that he was a mere bystander. See *Heinze v. State*, 310 Ga. 552, 559 (2) (852 SE2d 504) (2020) (by agreeing to trial court's actions, defendant invited the actions and affirmatively waived any claim of error regarding them); *Medina v. State*, 309 Ga. 432, 438 (2) (844 SE2d 767) (2020) ("A party may not complain on appeal of a ruling that he contributed to or acquiesced in by his own action, trial strategy, or conduct." (citation and punctuation omitted)).

But even if Hayward did not waive his right to appellate

19

review, any error was harmless. See *Adkins v. State*, 301 Ga. 153, 158 (3) (a) (800 SE2d 341) (2017) ("A nonconstitutional error is harmless if it is highly probable that the error did not contribute to the verdict."). Because Hayward's counsel acknowledged that Hayward was the person identified in the video and still images and elicited testimony to that point, it is highly probable that the outcome of Hayward's trial would have been no different even if the trial court had prevented lay witnesses from identifying Hayward in the video and still images.

5. Levatte and Hayward argue that the trial court erred in denying their motions to sever their cases from that of their co-defendants. The trial court did not abuse its discretion.

"When two or more defendants are jointly indicted for a capital offense" and the State does not seek the death penalty, "such defendants may be tried jointly or separately in the discretion of the trial court." OCGA § 17-8-4 (a). Accordingly, we review a trial court's decision to deny a severance motion for an abuse of discretion. See *Smith v. State*, 308 Ga. 81, 85 (2) (839 SE2d 630) (2020). "In ruling

on a motion to sever, a trial court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses." Id. (citation and punctuation omitted). And to obtain a new trial based on the denial of a severance motion, Levatte and Hayward must show a "clear prejudice and denial of due process as a result of [their] co-defendants' antagonistic defenses that might have been avoided by separate trials." *Walter v. State*, 304 Ga. 760, 763 (2) (822 SE2d 266) (2018) (citation and punctuation omitted).

Hayward argues that there is a substantial likelihood that the jury was confused by the particulars of the evidence and law and that evidence against the other defendants was considered against him. Similarly, Levatte argues that his conviction was likely the result of "spillover evidence" — that is, significant and substantial evidence against co-defendants that tainted the jury's consideration of much weaker evidence against another defendant. But it is unlikely that the jury confused the evidence or the law applicable to

Levatte or Hayward because all three defendants were charged with the same offenses stemming from the same incident with largely the same evidence; the jury was instructed to determine guilt or innocence of each defendant separately; the jury returned a separate verdict for each defendant; and the jury was instructed on mere association, mere presence, and parties to a crime. See *McClendon v. State*, 299 Ga. 611, 615 (3) (791 SE2d 69) (2016).

Moreover, neither Levatte nor Hayward shows that their co-defendants raised antagonistic defenses against them, much less that they were thereby prejudiced or denied due process. None of the defendants in this case testified, neither Levatte nor Hayward points to particular testimony elicited by defense counsel or otherwise presented by their co-defendants to support their argument that severance was required, and there was substantial evidence of Levatte's and Hayward's guilt that would have been admitted regardless of severance. See *Walter*, 304 Ga. at 763-764 (2) (defendant showed no prejudice or denial of due process in trial court's denial of his severance motion when none of the defendants

22

testified, defendant could not point to particular testimony supporting his argument that severance was required, and substantial evidence of defendant's guilt would have come in regardless of severance). Although the evidence may have been stronger for some of the defendants than for others, where, as here, evidence exists that the defendants acted in concert, the trial court is not required to grant a motion to sever merely because the evidence against one co-defendant is stronger. See *Smith*, 308 Ga. at 85-87 (2). The trial court did not abuse its discretion in denying Levatte's and Hayward's severance motions.

6. Finally, Hayward argues that the trial court abused its discretion by denying his request for a jury charge on the lesser offense of simple battery. Hayward's claim fails because he has not shown plain error.

Hayward requested a jury charge on simple battery, which the trial court denied. Hayward objected during the charge conference but not did not object again after the jury instructions were given, so we review the trial court's failure to charge on simple battery for

23

plain error. See *White v. State*, 291 Ga. 7, 8 (2) (727 SE2d 109) (2012) (an "objection voiced at the charge conference does not preserve objections to the charge as subsequently given"). To establish plain error, Hayward "must point to an error that was not affirmatively waived, the error must have been clear and not open to reasonable dispute, the error must have affected his substantial rights, and the error must have seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Denson v. State*, 307 Ga. 545, 547-548 (2) (837 SE2d 261) (2019) (citation and punctuation omitted). To show that an error affected his substantial rights, Hayward must make an "affirmative showing that the error probably did affect the outcome below." *McKinney v. State*, 307 Ga. 129, 135 (2) (b) (834 SE2d 741) (2019) (citation and punctuation omitted). If Hayward fails to meet any one of the elements of the plain error test, his claim fails. See *Denson*, 307 Ga. at 548 (2).

Simple battery occurs when a person "*[i]ntentionally* makes physical contact of an insulting or provoking nature with the person of another; or . . . *[i]ntentionally* causes physical harm to another."

24

OCGA § 16-5-23 (a) (1), (2) (emphasis supplied). At trial, defense counsel elicited testimony and argued in closing that Hayward physically touched Ricks after Ricks approached and put his hands on Hayward. On appeal, Hayward argues that his only contact with Ricks was when he instinctively put his hands up to prevent Ricks from running into him at the shower door, and when Ricks lunged toward him in the common area.

The trial court's denial of Hayward's request for a simple battery charge was not plain error because Hayward has not shown that it probably impacted the outcome of his trial. To do so, Hayward would have to show that, if given a simple battery charge, the jury likely would have found that Hayward committed only simple battery — that he intentionally made physical contact with Ricks during the assault but that the intentional contact was not an attempt to assist in the assault on Ricks. But a finding of intentional contact would be contrary to Hayward's own argument during trial that any contact between him and Ricks was initiated by Ricks and unintentional on his part. And there was substantial evidence that

25

Hayward's actions during the assault were intended to assist his co-defendants in assaulting Ricks. In addition to Tannahill and Renfroe's identification of Hayward as one of Ricks's assailants, the surveillance video was played during trial and the individual identified as Hayward moved in concert with the group of individuals stabbing Ricks as they approached, attacked, and withdrew, while other inmates backed away during the attack. Considering Hayward's own argument during trial and the considerable evidence of his participation in the assault of Ricks, it is unlikely that the jury would have found him guilty of only simple battery even if the trial court granted his request for the charge.[8]

*Judgments affirmed. All the Justices concur.*

---

[8] Neither Levatte nor Hayward makes an argument that all the errors we assume today, though individually harmless, nevertheless harmed them when aggregated. And no such cumulative prejudice is apparent to us on this record. See *State v. Lane*, 308 Ga. 10, 18 (1) (838 SE2d 808) (2020) ("[A] defendant who wishes to take advantage of the [cumulative error rule] should explain to the reviewing court just how he was prejudiced by the cumulative effect of multiple errors."); *Armstrong v. State*, 310 Ga. 598, 607 (5) n.13 (852 SE2d 824) (2020).

Decided May 3, 2021.

Murder. Hancock Superior Court. Before Judge Trammell.

*Crawford & Boyle, Eric C. Crawford*, for appellant (case no. S21A0041).

*Leslie S. Jones*, for appellant (case no. S21A0441).

*Timothy L. Lam*, for appellant (case no. S21A0494).

*Stephen A. Bradley, District Attorney, T. Wright Barksdale III, Assistant District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, William C. Enfinger, Elizabeth Rosenwasser, Assistant Attorneys General*, for appellee.