313 Ga. 172
FINAL COPY

S21A0967.  MADDOX v. THE STATE.

BETHEL, Justice.

A jury convicted Sovensky Maddox of the malice murder of Lafayette Smith. Maddox's jury trial was conducted simultaneously with the bench trial of his co-defendant, Jason Evans. Evans was acquitted. Maddox appeals, contending that the trial court erred by simultaneously holding a bench trial for his co-defendant while holding a jury trial for him and by denying his motion to sever the trials. We determine that Maddox waived any claim of error in regard to the simultaneous jury and bench trials and that the trial court did not abuse its discretion by denying Maddox's motion to sever. We thus affirm.[1]

---

[1] The crimes occurred on July 15, 2004. On October 19, 2004, a Fulton County grand jury jointly indicted Maddox and Evans for the malice murder of Smith (by manually strangling him) (Count 1), felony murder of Smith predicated on aggravated assault (Count 2), aggravated assault of Smith by manual strangulation (Count 3), and aggravated assault of Smith by punching and kicking him (Count 4). The trial court granted a special demurrer filed by

Maddox and Evans as to Count 3 and dismissed that count in the indictment.

Before trial, Evans requested a separate trial or, in the alternative, a bench trial instead of a jury trial. The State argued that in order to sever, Maddox would have to testify in a separate trial for Evans. The trial court denied the motion to sever but granted Evans's request for a bench trial. Maddox did not object to the trial court's decision to hold a simultaneous jury and bench trial. The next day, however, Maddox filed a motion to sever, which the trial court denied. A trial was held from March 20 to 24, 2006, and the jury found Maddox guilty of Counts 1, 2, and 4. In Evans's bench trial, the trial court found Evans not guilty of each count.

The State appealed from the judgment of acquittal in Evans's case. On June 4, 2007, this Court dismissed the State's appeal. See *State v. Evans*, 282 Ga. 63 (646 SE2d 77) (2007). His case is not part of this appeal.

On April 7, 2006, the trial court sentenced Maddox to life in prison on Count 1. The trial court merged Counts 2 and 4 into Count 1, although Count 2 was actually vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369 (434 SE2d 479) (1993). In its response brief before this Court, the District Attorney argues that the trial court erred by merging Count 4 into Count 1 for sentencing, arguing that Count 4 (aggravated assault by punching and kicking) should not have merged because that charge was for conduct separate from manual strangulation, which formed the basis of the malice murder charge set forth in Count 1. We note, however, that the State did not file a cross-appeal enumerating the alleged error, and we therefore exercise our discretion not to consider this question. See *Dixon v. State*, 302 Ga. 691, 697-698 (4) (808 SE2d 696) (2017).

Also on April 7, 2006, Maddox timely filed a motion for new trial, which the trial court denied on August 6, 2007. On August 16, 2007, Maddox's trial counsel filed a notice of appeal directed to the Court of Appeals. On June 13, 2008, the Court of Appeals transferred the appeal to this Court. On July 8, 2008, Maddox filed a pro se motion for replacement of counsel, alleging that his trial counsel had provided ineffective assistance. On September 18, 2008, Maddox's trial counsel filed an extraordinary motion for new trial and sought the appointment of outside counsel to consider raising an ineffective assistance of counsel claim in accordance with this Court's decision in *Garland v. State*, 283 Ga. 201 (657 SE2d 842) (2008). On October 7, 2008, this Court remanded Maddox's case to the trial court.

Following remand, on October 7, 2008, the trial court appointed new appellate counsel for Maddox. Following the appointment and withdrawal of several attorneys over the course of more than a decade, on October 24, 2019,

1. The evidence presented at trial showed the following. Around 3:30 a.m. on July 15, 2004, police officers and medical technicians responded to an anonymous call regarding an incident that occurred at the Grady Homes Apartments in Fulton County. Officers found Smith lying in the parking lot with facial injuries and blood on his face. Smith was not breathing. The medical examiner later determined that Smith died of manual strangulation.

The police identified Maddox as a suspect based on information from a confidential informant. Detective J. Thorpe, Jr., later interviewed Tremone Mario Brown and James Sheffield, both of whom witnessed the incident. Brown and Sheffield were separately presented with a six-photo lineup containing a photo of Maddox. Both Brown and Sheffield identified Maddox and said that he choked, punched, and kicked Smith. In a statement to investigators, Brown stated that he and Sheffield knew Maddox for a few weeks

---

through new counsel, Maddox filed an amended motion for new trial. On March 10, 2021, the trial court issued an order denying that motion. On March 15, 2021, Maddox filed an amended notice of appeal directed to this Court, which he again amended the following day. His appeal was docketed to this Court's August 2021 term and submitted for a decision on the briefs.

prior to the death of Smith and had seen him about 30 times before.

At trial, Brown and Sheffield testified that sometime between midnight and 3:00 a.m. on the day of the incident, Smith was walking near the Grady Homes Apartments. Evans grabbed Smith by the hand as Maddox walked toward them. Maddox then demanded money that Smith owed him. Smith responded that he did not have any money but offered a VCR in his possession in exchange for the debt owed. Maddox responded by punching Smith in the face. Smith attempted to run away, but Maddox grabbed him. Maddox then started to choke Smith, threatening that he would "make him go to sleep." Maddox continued to choke Smith, knocking him to the ground. Maddox then repeatedly kicked Smith in the head and face. At the same time, Evans searched Smith's pockets and kicked Smith in his side.

Adrian Crews was nearby while the attack was happening. Brown and Sheffield met him behind a building in the apartment complex and told him what had happened. Brown, Sheffield, and Crews then returned to the spot where Smith had been attacked and

4

found Smith bleeding on the curb. Brown and Sheffield left the scene, went to Brown's mother's house, and saw Crews later that day.[2]

2. Maddox contends that the trial court erred by holding a jury trial for him and a bench trial for Evans at the same time and by denying his motion to sever the trials. The record shows that on the first day of trial, March 20, 2006, Evans moved to sever the cases because he expected to offer evidence that Maddox was guilty and Maddox would testify that Evans was not guilty. The trial court denied that motion. Evans then moved to have a bench trial while Maddox was simultaneously tried by a jury. After consideration, the trial court agreed to that proposal and asked if anyone had an objection. Maddox did not object. Because Evans would receive a bench trial, the trial court and the parties agreed that all the peremptory jury strikes would go to Maddox as opposed to being split between Maddox and Evans. Evans did not participate in jury

---

[2] In his closing argument, Maddox's counsel argued that it could have been Crews who killed Smith and that Brown, Sheffield, and Crews conspired to blame Maddox for the crimes.

selection. The next day, Maddox moved for severance. He argued that he could not receive a fair trial before a jury if, at the same time, Evans was presenting evidence to the court that implicated Maddox. The trial court denied Maddox's motion, and the simultaneous trials began later that day.

At the beginning of voir dire and after discussions between the parties and the court, the trial court stated the following to the prospective jurors:

> Also[,] before I read to you the indictment, I want to mention to you that there will be two defendants that you are going to hear about in the indictment. As you know, you have a right to — the Constitution guarantees you a right to a trial by jury. One of the defendants has chosen a trial by jury and the other defendant has chosen a trial by judge. So this defendant is here now and will be participating in this jury selection. The other defendant will join us before the evidence begins, and that defendant will not be the object of your deliberation if you are chosen.

At trial, the State called nine witnesses to testify. The State's witnesses were subjected to cross-examination by counsel for Maddox and Evans. Maddox called three witnesses: his older brother, his sister, and Detective Stephen Balkcom (who spoke with

both Brown and Sheffield the evening of July 15). Maddox did not testify. Evans did not testify and did not call any witnesses. Counsel for Evans did not cross-examine any of the witnesses Maddox called.

(a) Maddox first contends that the trial court erred by holding a jury trial for him and a bench trial for Evans at the same time. The propriety of conducting joint bench and jury trials at the same time, and whether any special considerations for conducting such trials in this manner are necessary, appear to present questions of first impression for this Court. Nevertheless, we do not reach those questions today. By failing to object to this arrangement when it was announced by the trial court, Maddox waived any claim of error on appeal. See *Benton v. State*, 300 Ga. 202, 205 (2) (794 SE2d 97) (2016) ("Generally, to preserve appellate review of a claimed error, there must be a contemporaneous objection made on the record at the earliest possible time. Otherwise, the issue is deemed waived on appeal." (citation and punctuation omitted)). Here, Maddox did not object to the trial court's decision to hold the joint trial, despite ample opportunity to do so. He has thus waived his right to appellate

review of the trial court's action. See id.

(b) Maddox also argues that the trial court abused its discretion by denying his motion to sever, which he filed on the day after the trial court announced that it would conduct simultaneous jury and bench trials. In non-death penalty cases, "[a] trial court has the discretion to grant or deny a severance." *Ballard v. State*, 297 Ga. 248, 255 (8) (773 SE2d 254) (2015); see also OCGA § 17-8-4 (a). The three factors a trial court should consider when determining whether to grant or deny a motion to sever are

> (1) whether the number of defendants will confuse the jury as to the evidence and the law applicable to each defendant; (2) whether, despite cautionary instructions from the court, there is a danger that evidence admissible against one defendant will be improperly considered against another defendant; and (3) whether the defenses of the defendants are antagonistic to each other or to each other's rights of due process.

(Citation and punctuation omitted.) *Ballard*, 297 Ga. at 255 (8). "[I]t is incumbent upon the defendant who seeks a severance to show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will

8

not be disturbed." (Citation and punctuation omitted.) Id. Further, "[t]he defendant needs to show more than he or she has a better chance of acquittal if tried separately or the evidence against the co-defendant is stronger." (Citations omitted.) *Griffin v. State*, 273 Ga. 32, 33 (2) (537 SE2d 350) (2000).

Maddox has failed to make the required showing of prejudice to show that his motion to sever should have been granted. As the trial court determined in denying the severance motion, the joint trial did not present a significant likelihood of confusion of the evidence and law, or the possibility that evidence introduced against Evans might be improperly considered against Maddox. There were only two defendants, both were charged jointly with the same crimes, and the law applicable to each was substantially the same. Maddox has not shown that presentation of any evidence against Evans that may have been brought in through the examinations of witnesses led to juror confusion. See *Draughn v. State*, 311 Ga. 378, 387 (5) (858 SE2d 8) (2021) (determining that there was little risk of jury confusion where defendants were charged with the same

9

offenses stemming from the same incident with largely the same evidence). The fact that Evans pointed to Maddox as the one solely responsible for strangling Smith does not in itself indicate that the jurors were confused by the presentation of evidence, even with Maddox's different argument that it was in fact Crews or someone else who committed the crime. Further, Maddox has not shown, or even argued, that there was any evidence presented solely against Evans or that any such evidence was clearly stronger than the evidence against Maddox.

Instead, Maddox argues that he was prejudiced by Evans's counsel using his cross-examination of the State's witnesses to elicit testimony that showed that Maddox was guilty of the crimes and that Evans was not. Maddox points specifically to Evans's counsel's cross-examinations of Brown and Sheffield, during which counsel asked a number of questions that attempted to clarify that the witnesses saw Maddox attacking Smith while Evans stood by. However, such questioning did not elicit additional evidence regarding Maddox's involvement in the crimes beyond what the

State elicited on direct examination. The cross-examinations simply drew out further details suggesting that *Evans* never punched or choked Smith. The cross-examination of these witnesses by Evans's counsel did not prejudice Maddox, as the specific testimony that was elicited was admissible against Maddox and did not add any new facts tending to incriminate Maddox. See *Floyd v. State*, 307 Ga. 789, 797 (2) (837 SE2d 790) (2020) (no showing of prejudice despite co-defendant's presentation of evidence that implicated appellant in the crimes where appellant could not show that evidence introduced by co-defendant would have been inadmissible had it been introduced by the State).

Moreover, although the cross-examinations arguably damaged Maddox's case by undermining his arguments to the jury that it could have been Crews who killed Smith and that Brown, Sheffield, and Crews had conspired to blame Smith's killing on Maddox, the State's direct examination also damaged these arguments. Maddox has thus failed to show "any specific prejudice resulting from antagonistic defenses that would have required the trial court to

11

grant his motion to sever." (Citation and punctuation omitted.) *Floyd*, 307 Ga. at 797 (2); see also *Krause v. State*, 286 Ga. 745, 750 (5) (691 SE2d 211) (2010) ("[U]nless there is a showing of resulting prejudice, antagonistic defenses do not automatically require a severance." (citation and punctuation omitted)); *Callendar v. State*, 275 Ga. 115, 116 (2) (561 SE2d 113) (2002) ("The mere fact that [a co-defendant] tried to pin the blame on [the appellant] was not sufficient in itself to show a denial of due process.").

Moreover, the procedural safeguards implemented by the trial court and parties further prevented confusion of the evidence. Among the measures taken to avoid confusion, the parties agreed that the jury would not hear opening statements and closing arguments by Evans's counsel, and the trial court made clear to the jurors that they should not consider Evans's guilt or innocence in their deliberations. To the extent a joint bench and jury trial affects a decision on severance, the steps taken here were sufficient to support the trial court's decision not to sever.

In light of the foregoing, Maddox has failed to demonstrate that

he was prejudiced by being tried jointly with Evans. Thus, under the circumstances presented here, we determine that the trial court did not abuse its discretion by denying Maddox's motion to sever. See *Walter v. State*, 304 Ga. 760, 763-764 (2) (822 SE2d 266) (2018) (defendant showed no prejudice or denial of due process in trial court's denial of his severance motion when none of the defendants testified, defendant could not point to particular testimony supporting his argument that severance was required, and substantial evidence of defendant's guilt would have come in regardless of severance).

*Judgment affirmed. All the Justices concur.*

Decided February 15, 2022.

Murder. Fulton Superior Court. Before Judge Newkirk.

*John R. Monroe*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Eric C. Peters, Assistant Attorney General*, for appellee.