319 Ga. 51
FINAL COPY

S24A0382. JACKSON v. THE STATE.

WARREN, Justice.

Appellant Derylmyaize Jackson was convicted of felony murder and a firearm offense in connection with the shooting death of Tazavia Cooper.[1] In his sole claim on appeal, Jackson contends that his trial counsel provided ineffective assistance by failing to object to statements that the prosecutor made during her closing argument. As explained below, we affirm.

1. The evidence presented at Jackson's trial showed the following. On July 5, 2019, Jackson and Cooper exchanged text

---

[1] Cooper was killed on July 5, 2019. In October 2020, a Thomas County grand jury indicted Jackson for felony murder based on aggravated assault, aggravated assault, and possession of a firearm during the commission of a felony. At a trial from June 28 to 30, 2021, a jury found him guilty of all counts. The trial court sentenced Jackson to serve life in prison without the possibility of parole for felony murder and five consecutive years for the firearm offense; the aggravated-assault count merged for sentencing purposes. Jackson filed a timely motion for new trial, which he later amended through new counsel. After an evidentiary hearing, the trial court denied the motion in August 2023. Jackson then filed a timely notice of appeal, and the case was docketed to the term of this Court beginning in December 2023 and submitted for a decision on the briefs.

messages in which Jackson offered to trade his "[G]lock" handgun for Cooper's "[K]el [T]ec" gun. Around 1:15 p.m., Cooper arrived on Feinberg Street in Thomasville, where he and Jackson had arranged to meet.

According to Tahrik Anderson, he and Jackson were hanging out on Feinberg Street when two men, whom Anderson did not know but whom investigators later identified as David McNair and Cooper, arrived in a car. Jackson began "acting weird"; he walked to the driver-side window and discussed "exchang[ing] guns" with Cooper, who pulled out a Kel-Tec handgun. Jackson pulled out a black handgun, which Cooper examined. McNair then got out of the passenger seat, urinated on the ground, got back in the car, and reached down toward the floorboard. Jackson fired shots toward Cooper, grabbed the Kel-Tec handgun from Cooper's lap, and ran away. Anderson fled with Jackson. Although Anderson testified that he was "in fear of [his] life" because he thought McNair was reaching for a gun, Anderson also testified that he did not hear Cooper or

2

McNair threaten Jackson and he did not see McNair with a weapon.[2]

McNair called 911. Investigators who responded to the scene found Cooper, who had been shot once on the left side of his head, slumped over the center console of the car, dead. McNair was sitting on a nearby curb, crying. Investigators did not find any weapons at the scene, and they did not see any weapons on McNair.[3] A crime scene investigator found three Luger 9mm shell casings on the ground near the car, which she testified indicated that one gun was fired three times. Based on the location of two bullet holes in the back driver-side window and the position of Cooper's body on the center console, the investigator concluded that the first shot was fired through the open driver-side window, hitting Cooper, who was likely sitting upright (rather than leaning toward the driver-side window), and causing him to slump over the console; the second and third shots were then fired through the back driver-side window,

---

[2] On direct examination, Anderson testified that during an interview with investigators on the day after the shooting, he untruthfully said that Jackson shot because McNair "pulled a gun."

[3] McNair did not testify at trial.

3

indicating that the shooter moved from the driver-side window toward the back of the car as he shot.

After the shooting, a friend picked up Jackson and Anderson and drove them to a nearby apartment complex. A woman who was at the complex testified that Jackson looked "scared" and said that he "need[ed] some bleach, [he] just killed someone." According to Anderson, someone then drove him and Jackson to a friend's house. Jackson had the Kel-Tec handgun there, but Anderson did not know what ultimately happened to that gun or the gun Jackson used to shoot Cooper. Investigators never recovered the guns. Jackson turned himself in at a police station later that evening.

Jackson did not testify at trial. His theory of defense was that the State could not meet its burden of proving that he did not act in self-defense.

2. Jackson contends that his trial counsel provided constitutionally ineffective assistance by failing to object during the prosecutor's closing argument. Specifically, Jackson points to the prosecutor's following statements to the jury, while discussing the

State's burden of proof: "[W]hat it all boils down to, is what your heart and your mind tell you about the evidence. If you find in your heart and your mind that you believe Derylmyaize Jackson committed these offenses, then you are authorized to return a verdict of guilty." Relying primarily on *Debelbot v. State*, 308 Ga. 165 (839 SE2d 513) (2020), in which we held that the appellants' trial counsel provided ineffective assistance by failing to object to the prosecutor's "'egregious misstatement of the law'" "that proof beyond a reasonable doubt requires something less than proof that leaves a jury with 51 percent certainty," Jackson claims that the prosecutor's statements here similarly reduced the State's burden to prove the charged crimes beyond a reasonable doubt. Id. at 167 (citation omitted).

To prevail on his claim of ineffective assistance, Jackson must establish that his counsel's performance was constitutionally deficient and that he suffered prejudice as a result. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984); *Scott v. State*, 317 Ga. 218, 221 (892 SE2d 744) (2023). To

prove deficient performance, Jackson must show that his lawyer "'performed his duties in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms.'" *Scott*, 317 Ga. at 221 (citation omitted). To prove prejudice, Jackson must demonstrate "'that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different.'" Id. at 221-222 (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Assuming (without deciding) that Jackson's trial counsel performed deficiently by failing to object to the prosecutor's statements about reasonable doubt, Jackson has not established a reasonable probability that the outcome of his trial would have been different if counsel had objected, so he has not shown prejudice. See *Scott*, 317 Ga. at 222 (explaining that if a defendant fails to make a sufficient showing on one part of the *Strickland* test, we need not address the other part).

As we have explained in decisions after *Debelbot*,

6

that case involved a specific set of circumstances that made the prosecutor's comments about reasonable doubt uniquely prejudicial. It was already a close question whether the underwhelming and almost entirely circumstantial evidence was legally sufficient. That evidence was unusual in that it showed that the two defendants had essentially equal opportunities—and no one else had any opportunity at all—to inflict the fatal injuries, so the logical probability that either [defendant] inflicted the fatal trauma would be 50 percent. And, given that peculiarity, the prosecutor's suggestion that the jury could convict a defendant even if it was less than 51 percent sure about the defendants' guilt was uniquely harmful. Finally, the trial court's instruction in *Debelbot* that the State is not required to prove its case to "a mathematical certainty," a phrase which the State repeated twice, may well have been understood by the jury not as correcting the State's error, but as reinforcing it. Absent those unique circumstances, defendants seeking to establish prejudice from a prosecutor's comments that do not accurately characterize reasonable doubt cannot simply rest on *Debelbot*. Instead, a defendant asserting an ineffective-assistance claim like the one here must show how a prosecutor's particular mischaracterization of reasonable doubt likely affected how a jury weighed the evidence of his guilt under the circumstances of his case (and in doing so, show how objecting to the comments would have created a reasonable probability of a different outcome).

*Scott*, 317 Ga. 225-226 (cleaned up).

Here, although the statements that Jackson points to, if viewed in isolation, may have misinformed the jurors that they would be

7

authorized to find Jackson guilty if they believed in their "heart[s]" and their "mind[s]" that he was guilty—rather than if the State proved beyond a reasonable doubt each essential element of the charged crimes—Jackson makes no specific argument as to how these statements affected the outcome of his trial in light of the evidence of his guilt, other statements that the prosecutor made during closing, and the trial court's instructions to the jury. Given the facts of his case, however, we have no difficulty concluding that this case is distinguishable from *Debelbot*. To begin, unlike the evidence in *Debelbot*, the evidence of Jackson's guilt was not "underwhelming," because the State presented significant proof to rebut his claim of self-defense. In this respect, Anderson testified that Jackson shot Cooper and then stole his gun, Anderson did not hear Cooper or McNair threaten Jackson, and McNair did not have a gun. Investigators did not find any weapons at the scene or see any weapons on McNair, and the ballistics evidence suggested that only one gun was fired at the time of the shooting, indicating that neither Cooper nor McNair shot toward Jackson. And although Jackson

8

eventually turned himself in to law enforcement officials, he fled the crime scene just after the shooting and told a witness that he needed "bleach" because he had "just killed someone." See, e.g., *Scoggins v. State*, 317 Ga. 832, 838 (896 SE2d 476) (2023) (noting that flight from the scene of a crime generally can be viewed as circumstantial evidence of guilt).

Moreover, before the prosecutor made the statements at issue here, she accurately explained that "[t]he burden of proof is always on the State to prove each element beyond a reasonable doubt." She also correctly characterized reasonable doubt as "not arbitrary or capricious doubt. It's not a far[-]flung doubt. It's not a doubt for which you can give a mathematical certainty, but it is a doubt of a fair and impartial minded juror honestly seeking the truth. It is a doubt for which you can give a reason." In addition, she told the jurors that the trial court would instruct them on the law that applied to the case, and the trial court did so. To that end, during the final jury charge, the trial court thoroughly and properly instructed the jury on the presumption of innocence, the State's

burden to prove beyond a reasonable doubt every essential element of the crimes charged, and the definition of reasonable doubt.[4] The court then stated, among other things, that it was the court's duty to instruct the jury on the law, that the jury was bound by such instructions, that the jury had the responsibility to determine the facts from the evidence presented and to apply the law to the facts, and that the lawyers' closing arguments were not evidence.

Thus, to the extent that the prosecutor mischaracterized the reasonable doubt standard, we cannot say that it was as egregious as the characterization in *Debelbot* and, unlike in that case, the

---

[4] As to the definition of reasonable doubt, the court said:

A reasonable doubt means just what it says. A reasonable doubt is a doubt of a fair-minded, impartial juror honestly seeking the truth. A reasonable doubt is a doubt based upon common sense and reason. It does not mean a vague or arbitrary doubt but is a doubt for which a reason can be given, arising from a consideration of the evidence, a lack of evidence, or a conflict in the evidence.

Now, after giving consideration to all of the facts and circumstances of this case, if your minds are wavering, unsettled, or unsatisfied, then that is a doubt of the law, and you must acquit the defendant. But, if that doubt does not exist in your minds as to the guilt of the accused, then you would be authorized to convict the defendant. If the State fails to prove the defendant's guilt beyond a reasonable doubt, it would be your duty to acquit the defendant.

statements here were corrected by the trial court's jury instructions. Especially given that the evidence of guilt was stronger in this case than in *Debelbot*, Jackson has not shown a reasonable probability that his lawyer's failure to object to the prosecutor's statements affected the outcome of his trial, and this claim fails. See, e.g., *Scott*, 317 Ga. at 225-226 (assuming that the appellant's trial counsel performed deficiently by failing to object to the prosecutor's statement during closing argument that "[o]nce you believe that the defendant is guilty, that is guilt beyond a reasonable doubt," among other things, and holding that the appellant failed to show prejudice because the evidence of his guilt was strong, the prosecutor told the jury that the trial court would instruct on the law, and the court thoroughly instructed the jury on the burden of proof, the presumption of innocence, and reasonable doubt); *Warren v. State*, 314 Ga. 598, 602-603 (878 SE2d 438) (2022) (assuming that the appellant's trial counsel performed deficiently by failing to object to the prosecutor's comment that proof beyond a reasonable doubt was not "'95 percent, 85 percent'" and holding that the appellant had not

11

proved prejudice because he had "not pointed to anything in this case like the circumstances in *Debelbot* that made the prosecutor's more egregious remark 'uniquely harmful' there, and the trial court . . . 'explained presumption of innocence, burden of proof, and reasonable doubt accurately and at length'") (citation omitted); *Draughn v. State*, 311 Ga. 378, 382-384 & n.5 (858 SE2d 8) (2021) (assuming that the appellant's trial counsel performed deficiently by failing to object to the prosecutor's "inadvisable" statements about reasonable doubt, and holding that the appellant failed to show prejudice because the evidence of his guilt was "plainly sufficient" and the trial court accurately instructed on the presumption of innocence, the State's burden of proof, and reasonable doubt).

*Judgment affirmed. All the Justices concur.*

Decided May 14, 2024.

Murder. Thomas Superior Court. Before Judge Hardy.

*Robert L. Persse*, for appellant.

*Bradfield M. Shealy, District Attorney, Jess C. Hornsby, Assistant District Attorney; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General, Eric C. Peters, Assistant Attorney General*, for appellee.